A95A1820. MARTIN v. FAIRBURN BANKING COMPANY.
A95A1821. ELLIJAY LUMBER & WOOD PRESERVING
COMPANY, INC. v. FAIRBURN BANKING COMPANY.
(463 SE2d 507)

SMITH, Judge.

Fairburn Banking Company brought suit against James Martin and Ellijay Lumber & Wood Preserving Company, Inc., seeking damages stemming from the severance and sale of timber from land owned by Martin on which Fairburn held a security interest. The trial court granted Fairburn's motion for summary judgment, and the defendants filed separate appeals from the trial court's order. We consolidated those appeals for review in this opinion. We now affirm.

The record reveals that Martin borrowed money from Fairburn to purchase the land in issue, executing promissory notes and a security deed in favor of Fairburn. The note was satisfied periodically by renewal notes. Thereafter, Martin entered into a contract with Ellijay Lumber to remove timber from the land in issue for commercial sale. Approximately four years after the timber was removed and sold, Fairburn brought this action against Martin and Ellijay Lumber, alleging it had been damaged by the removal of the timber and had not given its written consent to the cutting, as required by OCGA § 51-12-51 (a).

OCGA § 51-12-51 (a) provides in pertinent part that "[e]very person, firm, or corporation who, without the written consent of the person holding legal title to land or to an interest in land as security for debt, as shown by the public records of the county where such land is located, buys, sells, cuts, removes, holds, disposes of, changes the form of, or otherwise converts to the use of himself, itself, or another any trees growing or grown on such land shall be liable to the holder of the legal title for such trees, in any form, bought, sold, cut, removed, held, disposed of, changed in form, or otherwise converted by him or it, or for the value of such trees."

1. Martin contends the trial court erred in granting Fairburn's motion for summary judgment. He first maintains that permission was granted verbally by Fairburn's former CEO, Daniel Longino, thereby estopping the bank from denying that it gave consent. The trial court found oral permission was legally insufficient, given the plain language of the statute.

When interpreting a statute, all its words must be given due weight; we are forbidden to "read out" any words in the statute unless a clear reason appears for doing so. See *Porter v. Food Giant*, 198 Ga. App. 736, 738 (402 SE2d 766) (1991); *Dohn v. Lovell*, 187 Ga. App. 523, 525 (370 SE2d 789) (1988). Further, if a statute is plain and unambiguous, its words (except for terms of art or those with a particular meaning in connection with a specific trade or subject matter)

must be assigned their common and ordinary meaning. OCGA § 1-3-1 (b); *Sledge v. Employees' Retirement System*, 196 Ga. App. 597, 598 (396 SE2d 550) (1990). OCGA § 51-12-51 (a) clearly and unambiguously requires *written* consent. We therefore must agree with the trial court that verbal consent is inadequate to satisfy the statute.

2. Martin also asserts that he and Longino indicated their understanding that timber would be cut and sold by noting on the original note that the purpose of the loan was to "purchase land for resale." He contends the trial court erred in excluding parol evidence to "explain" this notation, because it constituted "written consent" within the meaning of OCGA § 51-12-51 (a).

The trial court did not err. Parol evidence was inadmissible to contradict or vary the terms of the written documents. OCGA §§ 13-2-2 (1); 24-6-1. Any alleged oral "understanding" between Martin and Longino at the time the note was signed that was not expressed in the terms of the note is now irrelevant. See *Leventhal v. Seiter*, 208 Ga. App. 158, 162 (4) (430 SE2d 378) (1993). The note clearly and simply recites that the purpose of the loan was to purchase the land for resale. It is not necessary to cut timber in order to resell land, and any alleged "understanding" to the contrary is in conflict with the written words. The trial court did not err in excluding this parol evidence.

3. Martin's final contention is that because the last renewal of the note was executed after the timber had been cut, the bank did not have a valid security interest in the note. We do not agree.

Martin argues there is at least a question of fact whether the renewal notes constituted an accord and satisfaction. In addition to satisfying Martin's original note and its renewals, the renewal note sued upon also served to consolidate other loans and was secured by additional collateral. He asserts that the bank had a duty, therefore, to inspect the property prior to executing the new security deed accompanying the renewal note, and it may not now sue for relief from its lack of diligence.

Martin fails to note, however, that the original security deed contained a clause providing that it was "intended . . . to secure any renewal or renewals of said loan whether in whole or in part." It also contained a "dragnet" or open-end clause, securing "any and all other indebtedness which said grantor may now or may hereafter owe said grantee." "Georgia law is clear that deeds to secure debt containing open-end clauses continue to be effective so long as there exists indebtedness between the grantor and the grantee. . . . It is also clear that the dragnet provision is a recognized exception to the general rule expressed in the statutes [such as OCGA §§ 44-14-3 (b), 44-14-60, 44-14-67] regarding instantaneous extinction of the deed and reconveyance to the grantor [upon satisfaction of a debt]." (Citations and punctuation omitted.) *Tedesco v. CDC Federal Credit Union*, 167 Ga.

App. 337, 339 (2) (306 SE2d 397) (1983). Accordingly, because debt continued to exist between Martin and Fairburn, the *original* security deed remained effective.

4. Ellijay Lumber contends the trial court erred in failing to consider the affidavit of Garland Thomas in ruling on the motion for summary judgment. The affidavit was filed at the same time Ellijay Lumber filed its response to Fairburn's motion for summary judgment. Fairburn objected to the response as untimely. Fairburn did not object, however, to the affidavit, which as Ellijay Lumber correctly notes, was properly filed prior to the day of the hearing. OCGA § 9-11-56 (c).

In its order, the trial court correctly found that Ellijay Lumber's *response to Fairburn's motion* was untimely. Nothing in the record indicates the trial court failed to consider the *affidavit*. The order recites, in fact, that the trial court considered "the . . . affidavits . . . and the entire record." The record thus fails to support Ellijay Lumber's contention that the trial court excluded the affidavit. We cannot consider facts related in briefs that are unsupported by the record. *Garrison v. Dept. of Human Resources*, 184 Ga. App. 449 (1) (361 SE2d 860) (1987).

5. We have reviewed Ellijay Lumber's remaining contentions and find them meritless.[1]

*Judgment affirmed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED OCTOBER 3, 1995 —
RECONSIDERATION DENIED OCTOBER 25, 1995 —

*Peevy & Lancaster, Donn M. Peevy*, for appellant (case no. A95A1820).

*Robert M. Ray, Jr., Wayne A. Coe*, for appellant (case no. A95A1821).

*Thompson, O'Brien, Kemp & Nasuti, J. Patrick O'Brien, Donna N. Kemp, Robert C. Buck*, for appellee.

---

[1] Ellijay Lumber's brief fails in several ways to comply with the rules of this Court. Among other deficiencies, no record citations are provided as required by Rule 27 (c) (3) (i); the argument is not presented following the sequence of the enumerations of error, as required by Rule 27 (c) (1); and no standard of review with citation of authority is included. Rule 27 (a) (3). We have carefully considered Ellijay Lumber's arguments. It should be noted in general, however, that the rules are intended to facilitate careful consideration of litigants' contentions, and failure to conform briefs to the rules makes it more difficult for the court to give these contentions the serious consideration they deserve.