### A11A1410. NEWTON v. LAWSON.
### A11A1411. LAWSON et al. v. LAWSON.
(720 SE2d 353)

ADAMS, Judge.

Jason and John B. Lawson III (collectively the "Lawsons") intervened in an existing lawsuit filed by appellant Danny Doy Newton for specific performance of a contract to make a will. The complaint asserted that Syble Lawson promised to leave Newton a life interest in her estate, with the remainder interest to her grandson Jason Lawson, in return for services provided by Newton, giving rise to an enforceable contract to make a will (the "Will Contract"). In these companion appeals, the Lawsons and Newton appeal the trial court's final judgment, following a bench trial, in favor of Christy B. Lawson, as the executor of Syble Lawson's estate.[1]

The Lawsons filed a recent, related appeal in the Supreme Court of Georgia, in which they contested Syble Lawson's 2004 will (the "2004 Will"). The Supreme Court explained the underlying factual basis of that appeal, as follows:

> Appellants John and Jason Lawson are the son and grandson of Syble Lawson, who died in December 2005 at age 73. Her June 2004 will left her entire estate to her other son, appellee Christy "Chris" Lawson; he was also named her executor. Appellants filed a caveat to the probate of this will as did Danny Newton (not a party to this appeal), who lived with testator for the last ten years of her life. Appellants asserted, inter alia, that the 2004 will was the product of undue influence, and Newton petitioned the probate court to probate a document purporting to be testator's 2000 will, under which Newton was left a life estate in testator's realty and the remainder interest went to appellant Jason Lawson, along with certain other bequests. After a hearing, the probate court established the 2004 will as testator's last will and testament and held the 2000 will to be revoked.

*Lawson v. Lawson*, 288 Ga. 37 (701 SE2d 180) (2010). The Supreme

---

[1] The appellants originally filed these appeals before the Supreme Court of Georgia, which transferred the case to this Court after determining that the appeals did not invoke the Supreme Court's equity jurisdiction.

Court affirmed the probate court's judgment validating the 2004 Will after finding no evidence in the record that Christy Lawson exerted undue influence on Syble Lawson. Id. at 38 (1). In this case, Newton and the Lawsons rely upon Syble Lawson's 2000 Will, a health care Durable Power of Attorney executed the same day, and a handwritten memorandum (the "Notes") discovered after her death to support their claim of a will contract.

The evidence showed that Newton met Syble Lawson in either 1995 or 1996 and subsequently moved into her home. Their relationship lasted until her death in 2005. Newton testified that in 1998 or thereafter Syble Lawson began indicating that she would leave him a life interest in her house (provided he did not remarry); income from her pine straw business; income from a rental trailer; the right to harvest timber, which he would share with Jason Lawson; and the right to receive certain personalty. In consideration for these promises, Newton agreed to care for Syble, to care for her dog and to perform upkeep and maintenance of the house and farm. Newton testified that in 2002 he gave up his job as a maintenance foreman at an apartment complex with a salary of $500 per week to care for Syble Lawson after she was diagnosed with breast cancer. Newton stated that he cared for Syble Lawson until her death and continued to care for her dog following her death. He also remodeled Syble Lawson's rental trailer, added a room onto the house and cleaned and maintained the property. He contends that these actions were undertaken pursuant to the Will Contract.

Newton asserts that the 2000 Will "essentially tracks" his agreement with Syble Lawson. That will left Newton a life estate in the house and the land "provided he lives alone," with a remainder interest in Jason Lawson. Newton also received income from the trailer and pine straw, and he shared the proceeds from any harvested timber with Jason Lawson. The Durable Power of Attorney for health care appointed Jason Lawson, Syble Lawson's neighbor, Corinne McMillian and Newton as her agents for making decisions about her health care. The Notes upon which Newton and the Lawsons rely are undated and unsigned but appear to be in Syble Lawson's handwriting. The Notes largely correspond with the terms of her 2000 Will with regard to the property left to Newton and Jason Lawson, but are not entirely consistent. For example, the Notes indicate that he should share the income from the pine straw with Jason Lawson, while the Will gives him all the income. The Notes also list various bequests of personal property that are not a part of the Will Contract and that differ somewhat from the 2000 Will. Although both the 2000 Will and the Notes indicate that Newton would care for the dog after her death, they do not address any obligations he had prior to her death. Newton did not see either the

2000 Will or the Notes until after Syble Lawson died.

Significantly, although Newton was not named in Syble Lawson's 2004 Will, the evidence at trial demonstrated that he received a $50,000 certificate of deposit ("CD") made payable to him on her death independent of any will. This CD is not mentioned in the Notes, nor is it a part of the Will Contract. Moreover, Newton acknowledged that Syble Lawson paid his living expenses until her death and paid him $100 per month out of the rental income from the trailer.

Christy Lawson testified at trial that on several occasions Syble Lawson stated, in Newton's presence and hearing, that Christy Lawson would inherit the farm. On those occasions, Christy Lawson says that Newton never protested based upon the Will Contract.

> A contract to make a will, supported by valuable consideration, is valid. An oral contract to make a will also may be valid and enforceable if entered into before January 1, 1998 . . . . However, such a contract must be definite, certain, and precise in its terms and its existence must be established beyond a reasonable doubt.

(Citations and punctuation omitted.) *Rushin v. Ussery*, 298 Ga. App. 830, 832 (1) (681 SE2d 263) (2009). Any will contracts entered into on or after January 1, 1998, must be in writing, signed by the one who undertakes to make a will or testamentary disposition. OCGA § 53-4-30.

1. Because Newton stated that his discussions with Syble Lawson about her estate occurred in 1998 and thereafter, he was required under OCGA § 53-4-30 to prove a written will contract signed by Syble Lawson. Based upon the evidence at trial, the judge concluded, in a well-reasoned opinion, that Newton failed to prove the existence of a written contract to make a will and entered judgment in Christy Lawson's favor. Newton and the Lawsons argue on appeal, however, that the requirements of OCGA § 53-4-30 are met by Syble Lawson's execution of the 2000 Will and her handwritten Notes.

Newton admitted at trial that Syble Lawson and he never signed a written contract memorializing the Will Contract. Nevertheless, Newton and the Lawsons argue that the 2000 Will should be admissible as evidence of that contract, citing *Martin v. Turner*, 235 Ga. 35, 37 (3) (218 SE2d 789) (1975). The *Martin* case, decided prior to the enactment of OCGA § 53-4-30, held that "a will, or codicil, written pursuant to an alleged *oral* contract to make a will, although revoked, is admissible in a suit upon such contract as a writing to help prove the *oral* contract." (Emphasis supplied.) Id.

Here, however, Newton and the Lawsons argue that the 2000 Will meets the writing and signature requirements of OCGA § 53-4-30, and thus proffer it as a written contract. Even assuming, without deciding, that the 2000 Will could be considered admissible in this case, it is not a written contract promising to make a will for valuable consideration. Although the 2000 Will was signed by Syble Lawson, nothing in its terms reflects a promise to leave her estate in the manner described in exchange for valuable consideration, and nothing in the language of the will irrevocably binds her to its terms. To the contrary, this Court is bound by the Supreme Court's conclusion that the 2000 Will was revoked upon Syble Lawson's execution of the 2004 Will. *Lawson v. Lawson*, 288 Ga. at 38 (1). Moreover, the 2000 Will does not address the obligations Newton says he undertook prior to Syble Lawson's death as consideration for her bequests. We conclude, therefore, that the document is simply what it purports to be: a revocable will reflecting Syble Lawson's testamentary intent at the time she executed it. The Supreme Court determined that Syble Lawson changed her testamentary intent when she executed the 2004 Will. Thus, the 2000 Will cannot be relied upon to fulfill the requirements of OCGA § 53-4-30.

Newton and the Lawsons also argue that the Notes, although unsigned, meet the statutory requirements. Contrary to their argument, however, the requirement that Syble Lawson sign a will contract is not a "useless formality" simply because the Notes are handwritten. The signature is, in fact, a mandatory statutory requirement. "It is axiomatic that when the language of a statute is plain and susceptible of but one construction, the courts have no authority to place a different construction on the statute, but must apply it according to its own terms. *Thompson v. Ga. Power*, 73 Ga. App. 587 (37 SE2d 622) (1946)." *Kirk v. Lithonia Mobile Homes*, 181 Ga. App. 533, 536 (2) (352 SE2d 788) (1987).

In any event, the Notes suffer from the same contractual inadequacies as the 2000 Will because they do not reflect the consideration Newton described as part of the Will Contract, nor do the Notes embody any promise on Syble Lawson's part. Rather, the Notes simply state her wishes as to the disposal of her property and the handling of her estate and contain no language binding her to distribute her property in the manner listed. Moreover, the Notes include distributions to individuals other than Newton and Jason Lawson. Thus, the Notes cannot reasonably be considered the written embodiment of the Will Contract Newton described.

Accordingly, we agree with the trial court that Newton and the Lawsons did not prove a written will contract meeting the statutory requirements.

2. Newton and the Lawsons also argue that the trial court erred

in finding that the equitable exceptions codified at OCGA §§ 23-2-131 and 23-2-132 are not applicable to OCGA § 53-4-30. OCGA § 23-2-131 (a) allows for the specific performance of a parol contract as to land "if the defendant admits the contract or if the contract has been so far executed by the party seeking relief and at the instance or by the inducements of the other party that if the contract were abandoned he could not be restored to his former position." OCGA § 23-2-132 provides that

> [s]pecific performance will not be decreed of a voluntary agreement or merely gratuitous promise. If, however, possession of lands has been given under such an agreement, upon a meritorious consideration, and valuable improvements have been made upon the faith thereof, equity will decree the performance of the agreement.

Newton contends that we should apply these provisions to order the specific performance of the Will Contract based upon his care for Syble Lawson and her dog, as well as his maintenance and upkeep of her property.

"But it is axiomatic that the terms of a specific statute govern over those of a more general statute,"[2] and thus the more specific provisions of OCGA § 53-4-30 addressing contracts to make a will control over the more general provisions of OCGA §§ 23-2-131 and 23-2-132 addressing any parol contract as to land and any voluntary agreement or merely gratuitous contract to land, respectively. Thus, even assuming, without deciding, that Newton had been able to prove an oral will contract beyond a reasonable doubt, we conclude that the equitable relief of specific performance is not available as a means of enforcing such a contract.[3]

In any event, as the trial court correctly found, Newton could not meet the requirements of these statutes.

> [W]here possession and valuable improvements are relied upon, they must have been by virtue of and on the faith of the oral contract or promise, so as to take the case out of the statute of frauds and constitute the equivalent of a writing by showing acts unequivocally referring to the alleged contract or promise.

*Taylor v. Cureton*, 196 Ga. 28, 30 (1) (25 SE2d 815) (1943). See also

---

[2] (Citation and punctuation omitted.) *Ga. Society of Ambulatory Surgery Centers v. Ga. Dept. of Community Health*, 309 Ga. App. 31, 36 (1) (710 SE2d 183) (2011).

[3] This conclusion is bolstered by the Supreme Court of Georgia's transfer of the case based upon a finding that the appeals did not invoke that Court's equity jurisdiction.

OCGA § 23-2-131 (b) (allowing specific performance based upon "possession alone with valuable improvements, if clearly proved in each case to have been done with reference to the parol contract"). As the trial court noted, Newton

> failed to show that he had possession of [Syble Lawson's] home or pine straw or timber sales and that he made valuable improvements thereto *simply by virtue of [Syble Lawson's] promise* that she would use her will to leave him a life estate in these things. To the contrary, [Newton] testified that [Syble Lawson] paid [him] for the work he performed on the home . . . . [Newton] further testified that he and [Syble Lawson] were a "loving couple" [who] lived their daily lives together, shared the same bed, vacationed together, and took care of one another and the home they shared. In short, his care was not compelled or contingent upon any promises of [Syble Lawson].

(Emphasis in original.) Therefore, Newton and the Lawsons are not entitled to specific performance of the Will Contract.

3. Newton and the Lawsons further argue that the trial court erred in finding Jason Lawson's claims moot. To the extent that Jason Lawson raised claims as a third-party beneficiary of the Will Contract, they are moot because Newton failed to prove an enforceable contract. As the Lawsons' counsel argued at trial, "this is a contract that's going to either stand or fall together. If the contract exists, the contract as set forth in the writing, which is required, benefits both Jason [Lawson] and Danny Newton. And — we don't feel that that could or should be separated."

But Newton and the Lawsons also argue, however, that Syble promised to provide for him based upon her concern for his health and medical care. They argue that this promise was supported by a separate, mutual consideration of love and affection between a grandmother and her grandson, independent of any contract with Newton. But Jason Lawson's claim of such a will contract also fails. Jason Lawson failed to prove a written contract that meets the requirements of OCGA § 53-4-30, nor did he prove an oral contract beyond a reasonable doubt that was "definite, certain, and precise in its terms." (Citations and punctuation omitted.) *Rushin v. Ussery*, 298 Ga. App. at 832 (1). Jason Lawson testified that "[s]he told me if I played — said, if you play your cards right, after I pass you'll never have to work another day in your life. I said, you know, thank you and went on. I didn't — I didn't go into details." Although other witnesses testified as to conversations at some point in time that Syble Lawson wanted to bequeath certain items to her grandson

Jason, the evidence at trial was insufficient to support Jason Lawson's contractual claims.[4]

*Judgments affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED NOVEMBER 29, 2011.

*Hall & Kirkland, Joseph M. Hall,* for appellant (case no. A11A1410).

*Ronald W. Hallman,* for appellant (case no. A11A1411).

*Brown, Rountree & Stewart, George H. Rountree, Jesse A. Van Sant,* for appellee.

---

[4] John Lawson's counsel described his claims at trial as "a very contingent claim . . . which would be to split the remainder interests should Jason [Lawson] die before Danny [Newton]." The Lawsons raise no arguments on appeal relating to any such claims.