**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 19, 2014**

# In the Court of Appeals of Georgia

A14A1325. VINEVILLE CAPITAL GROUP, LLC v. McCOOK.

BRANCH, Judge.

Under OCGA § 44-14-80, title to real property conveyed by a security deed that has not been cancelled or foreclosed upon after a certain period of time reverts to the grantor as a matter of law. The statute sets the default time period at seven years starting, depending on the circumstances, from either the maturity of the debt or from the date of the original conveyance. Id. The parties to the security deed are allowed, however, to extend the time to 20 years by so designating in the security deed. Id. The question in this case is whether the relevant security deed contains the necessary designation. The trial court held that an issue of fact remains as to the interpretation of the relevant security deed, and it therefore denied the appellant bank's motion to dismiss. We disagree and reverse.

The relevant facts are not in dispute. These facts show that Thomas McCook, Jr., obtained two loans and signed two deeds to secure debt concerning the same property. On or about July 1, 2002, he obtained a $1 million loan from his father, Thomas McCook, Sr.,[1] and signed a demand note to repay the loan. The same day, McCook, Jr., also entered into a security deed in which he conveyed title to his personal residence located at 760 Fieldstone Drive in Macon (the premises) to his father as security for the loan; this "McCook security deed," at issue in this case, was duly recorded in the county real property records on July 2, 2002. In 2005, McCook, Jr., obtained a separate loan of more than $500,000 from Regions Bank and executed a security deed for the same premises in favor of Regions, which deed was also duly recorded in the county property records, thereby creating a second position security interest in the same premises. As of July 2, 2009, seven years after the conveyance of the McCook security deed, McCook, Sr., had not foreclosed upon or cancelled the McCook security deed.[2]

---

[1] McCook, Sr., passed away on September 17, 2013 and his estate has been substituted as the plaintiff in this matter.

[2] On February 4, 2009, McCook, Sr., loaned an additional $1.5 million to McCook, Jr., and this additional loan was secured by the McCook security deed. McCook, Jr,. does not, however, contend that this event extended the reversionary period.

In 2012, Regions Bank sued McCook, Jr., who had defaulted on the Regions loan, and obtained a consent judgment for more than $750,000. In February 2013, appellant Vineville Capital Group, LLC purchased and was assigned the Regions security deed and the rights to the consent judgment obtained by Regions Bank against McCook, Jr.; thereafter Vineville initiated steps to foreclose on the premises.

On May 1, 2013, McCook, Jr., sued Vineville and others seeking to enjoin the foreclosure but later dismissed his action without prejudice. Meanwhile, two days prior to that dismissal, McCook, Sr., filed the instant action in which he, too, sought to enjoin Vineville from foreclosing on the premises. McCook, Sr., also sought a declaration that the McCook security deed remained valid and that he therefore still held the first priority security interest in the premises. The trial court granted McCook, Sr., a temporary restraining order enjoining the foreclosure. Vineville then moved to dismiss the litigation for failure to state a claim or, in the alternative, for judgment on the pleadings on the ground that title to the premises described in the McCook security deed had reverted to McCook, Jr., by operation of law on July 2, 2009, and that therefore, through the Regions security deed, Vineville held the first priority security interest in the premises. Following a hearing, the trial court denied the motion and held that there was a "genuine dispute" as to whether the parties to the

McCook security deed intended to invoke the 20-year time period for reversion of security deeds. The court also extended the interlocutory injunction. This Court granted Vineville's application for an interlocutory appeal of the trial court's decision.

On appeal of a trial court's ruling on a motion to dismiss, we conduct a de novo review. *Penny v. McBride*, 282 Ga. App. 590 (639 SE2d 561) (2006). "However, we construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor." *Ga. Dept. of Community Health v. Data Inquiry*, 313 Ga. App. 683 (722 SE2d 403) (2012) (citation and punctuation omitted). Our role is "to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts." *Penny*, 282 Ga. App. at 590 (citation, punctuation and footnote omitted); see also *Southwest Health & Wellness v. Work*, 282 Ga. App. 619, 623 (2) (639 SE2d 570) (2006) (on appeal of a motion for judgment on the pleadings, "the issue is whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law") (citation and punctuation omitted).

OCGA § 44-14-80 (a) (1) determines when title reverts to the grantor for security deeds with stated or fixed dates of maturity. Subsection (a) (2) determines when title reverts where "the maturity of the debt or debts or the maturity of the last installment thereof is not stated or fixed." OCGA § 44-14-80 (a) (2). We agree with the parties that because McCook, Jr.'s original debt to his father was not "stated or fixed," subsection (a) (2) applies in this case.

Subsection (a) (2) provides that title to real property conveyed to secure a debt reverts to the grantor seven years after the date of the conveyance; it also provides that in order to obtain the 20-year reversionary period (which would also run from the date of the conveyance) the parties to the security deed must show "by affirmative statement contained in the record of conveyance" that they "intend to establish a perpetual or indefinite security interest in the real property":

> If the maturity of the debt or debts or the maturity of the last installment thereof is not stated or fixed, title to real property conveyed to secure a debt or debts shall revert at the expiration of seven years from the date of the conveyance as stated in the record or, if not recorded, in the conveyance; provided, however, that where the parties by affirmative statement contained in the record of conveyance intend to establish a perpetual or indefinite security interest in the real property conveyed to secure a debt or debts, the title shall revert at the expiration of 20 years

5

from the date of the conveyance as stated in the record or, if not recorded, in the conveyance[.]

OCGA § 44-14-80 (a) (2).[3]

McCook, Sr., contends that an "affirmative statement" sufficient to create a 20-year reversionary period can be found on the first page of the McCook security deed in the single word "forever" found in the second paragraph of the deed. In full, the first page of the McCook security deed provides as follows:

> [1]  In consideration of One Million Dollars . . . to him paid, receipt of which is hereby acknowledged, Thomas H. McCook, Jr. of Bibb County, Georgia of the first part, has this day bargained and sold and does hereby transfer and convey unto Thomas Harlan McCook. . . his successors, heirs, executors, administrators and assigns, of the second part, the following described tract of land, to wit: [the premises]
>
> [2]  Said party of the second part, his successors, heirs, executors, administrators and assigns to have and to hold said tract of land forever, in FEE SIMPLE.
>
> He covenant[s] that he is lawfully seized and possessed of said described premises, and has a good title thereto, and right to convey same and that said land is unencumbered.

---

[3] Reversion of title to the grantor bars all actions to foreclose and to recover the property and bars the exercise of any power found in the deed to secure debt. OCGA § 44-14-83.

6

He warrant[s] the title to said described premises unto the said party of the second part, and his successors, heirs, executors, administrators and assigns, against the lawful claims of all persons whomsoever.

[3] This conveyance is intended to operate as provided in Sections 44-14-60, 44-14-66, 44-14-210 of the Official Code of Georgia of 1981 (Michie), and Acts amendatory thereof, in regard to sales of property to secure debt, and to pass the title to said property into the said party of the second part. The debt hereby secured being one certain principal note for said sum of One Million Dollars . . . of even date herewith, and payable to the order of Thomas Harlan McCook . . . payable on demand, according to the terms of a Promissory Note dated July 1, 2002.[4]

The Code sections referred to in the third paragraph quoted above pertain to deeds to secure debt.[5]

McCook, Sr.'s argument is that because the word "forever" found in paragraph 2 and the word "perpetual" found in OCGA § 44-14-80 can be seen as synonymous, the McCook security deed contains an "affirmative statement . . . intend[ed] to

---

[4] The second page of the McCook security deed has nine paragraphs of terms related to renewals and extensions, subrogation, indemnity, insurance, acceleration, time being of the essence, default, foreclosure, and assignment.

[5] OCGA § 44-14-60 provides that deeds to secure debt convey title of the property to the grantee until the debt is paid and the grantor reserves a right to have the property reconveyed; OCGA § 44-14-66 has provisions regarding the right of the grantor of a security deed to have the property reconveyed; and OCGA § 44-14-210 includes provisions regarding levy and sale of property including by persons holding legal title to the property pursuant to a deed to secure debt.

7

establish a perpetual or indefinite security interest in the real property conveyed to secure a debt or debts" as required by OCGA § 44-14-80 (a) (2), and that therefore, under the McCook security deed, title to the premises will only revert to McCook, Jr., 20 years from the date of the original conveyance, i.e., July 2, 2022. We disagree for the following reasons.

1. In its first two enumerations of error, Vineville contends the trial court erred by holding that parol evidence could be used to determine whether the McCook security deed contains the necessary OCGA § 44-14-80 "affirmative statement" and by failing to find as a matter of law that the McCook security deed, in fact, does not contain the affirmative statement required by the statute.

(a) The trial court denied Vineville's motion to dismiss in part on the grounds that "there is a genuine dispute as to whether the parties intended the habendum clause as an affirmative statement within the meaning of OCGA § 44-14-80 (a)" and that McCook, Sr., could possibly introduce evidence sufficient to warrant a declaration that the McCook security deed was still valid and in force. We agree with Vineville that to the extent the trial court held that parol evidence could show that the parties to the McCook security deed intended to invoke the 20-year reversionary period, it erred.

8

The plain language of OCGA § 44-14-80 (a) (2) places the burden on parties who desire to create a perpetual or indefinite security interest to do so "by affirmative statement contained in the record of conveyance." OCGA § 44-14-80 (a) (2). Thus, the "affirmative statement" must be found in the security deed itself. Because parol evidence would introduce information not contained in the record of conveyance, it cannot be used, as the trial court appears to have held, to supplement the meaning to clarify whether the parties intended to invoke the 20-year reversionary period.

It is true that Georgia law provides that if a court cannot glean the intention of the maker from the contents of the deed, "it may hear parol evidence to prove the maker's intention." OCGA § 44-6-21; see also *Second Refuge Church of Our Lord Jesus Christ v. Lollar*, 282 Ga. 721, 725 (653 SE2d 462) (2007) (extrinsic evidence admitted only where deed's text "is so ambiguous that its meaning cannot be determined through application of the ordinary rules of textual construction") (footnote omitted). But it is well established that "the terms of a specific statute govern over those of a more general statute." *Newton v. Lawson*, 313 Ga. App. 29, 33 (2) (720 SE2d 353) (2011) (punctuation and footnote omitted). Here, OCGA § 44-14-80 is the more specific statute in that it specifies how to invoke the 20-year reversionary period; it therefore governs over OCGA § 44-6-21. For these reasons,

9

we hold that to the extent the trial court held that parol evidence could be used to determine whether the parties to the McCook security deed intended to invoke the 20-year reversionary period, it erred.

(b) Second, we agree with Vineville and hold as a matter of law that the McCook security deed does not contain an affirmative statement showing that the parties "intend[ed] to establish a perpetual or indefinite security interest in the real property" as required by OCGA § 44-14-80 (a) (2).

"The construction of a deed presents a question of law which this Court reviews de novo." *Lollar*, 282 Ga. at 724 (2) (footnote omitted). "The cardinal rule of construction of deeds, as well as other contracts, is to ascertain the intention of the parties. If that intention be clear from the deed and circumstances of the transaction and contravenes no rule of law, it should be enforced." *Keith v. Chastain*, 157 Ga. 1, 6 (121 SE 233) (1923) (citation and punctuation omitted). See also *Greene v. Greene*, 311 Ga. App. 132 (714 SE2d 650) (2011) (where the language is unambiguous, a court must enforce the deed as written). "[T]he whole instrument is to be construed together so as to give effect, if possible, to the entire deed and the construction which will uphold a deed in whole and in every part is to be preferred." *Shoaf v. Bland*, 208 Ga. 709, 711 (2) (69 SE2d 258) (1952) (citation and punctuation omitted). And "[n]o

10

prescribed form is essential to the validity of a deed to lands or personalty." OCGA § 44-5-33. Nevertheless, "words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning." OCGA § 13-2-2 (2).

The phrase "forever, in fee simple" is found in what is commonly known as the "to have and to hold" or habendum clause[6] of the McCook security deed (found in paragraph 2 of the deed as numbered for this opinion). The traditional purpose of the habendum clause is to define the estate which the grantee is to have in the property granted. *Keith*, 157 Ga. at 5; see also 2 Patton and Palomar on Land Titles § 345 (3d ed.) ("The role of the habendum was to repeat the name of the grantee with a statement of the estate conveyed, and to what use.").[7] And habendum clauses with the language "forever, in fee simple" are often included on form deeds provided in

---

[6] The habendum clause is defined in Black's as "[t]he part of an instrument, such as a deed or will, that defines the extent of the interest being granted and any conditions affecting the grant." Black's Law Dictionary (9th ed. 2009).

[7] Pindar explains that the habendum clause, which can include the words "forever, in fee simple," contains "customary language"; that the language "actually serves no useful purpose and could be omitted entirely"; and that "[a]ny change in the usual habendum by unskilled scriveners may be treacherous, creating unexpected contingent remainders and reversions." 2 Ga. Real Estate Law & Procedure, § 19:29 (7th ed.).

11

practice treatises. See, e.g., Ga. Real Estate Title Exam. And Closings, §§ 4.4 & 4:5; 4P1 Nichols Cyc. Legal Forms § 56:425; 8 Ga. Pleading, Practice and Legal Forms § 44-5-33 Form 2.

The word "forever" in the habendum clause indicates the unlimited duration of the estate rather than the nature of the security interest. See *First Nat. Bank of Snyder v. Evans*, 169 SW2d 754, 756-57 ( Tex.Civ.App. 1943) (where the word "forever" in the habendum clause was X'ed out and replaced with the words "as set out above," the duration of the estate was controlled by a duration-limiting provision found earlier in the deed). Compare OCGA § 44-6-81 ("An estate for life may be either for the life of the tenant or for the life of some other person or persons."); OCGA § 44-6-100 ("An estate for years is one which is limited in its duration to a period which is fixed or which may be made fixed and certain."). Indeed, "[a]n absolute or fee simple estate is one in which the owner is entitled to the entire property with unconditional power of disposition during his life and which descends to his heirs and legal representatives upon his death intestate." OCGA § 44-6-20. See also 31 C.J.S. Estates § 12 ("A fee simple estate is one by which a tenant holds lands, tenements, or hereditaments to himself and his heirs, forever."); *Latham Homes Sanitation v. CSX Transp.*, 245 Ga. App. 573, 575 (538 SE2d 107) (2000) (the words

12

"forever, in fee simple," along with other standard phrases, such as "successors and assigns," "will warrant and defend the title thereof against the claim of all persons," typically indicate a fee simple title) (citations and punctuation omitted). In short, the word "forever" and the phrase "forever, in fee simple" are words of art, and although these words may be no longer necessary to convey title in fee simple,[8] they have long had a peculiar meaning under the law of this State. In the McCook security deed, they are used in this traditional sense. We therefore conclude that neither the word "forever" nor the phrase "forever, in fee simple" constitutes an affirmative statement showing that the parties "intend[ed] to establish a perpetual or indefinite security interest in the real property," as required by OCGA § 44-14-80 to invoke the 20-year reversionary period.

In addition, paragraph 3 of the McCook security deed provides that the conveyance is intended to operate as a security deed, and it identifies the debt being secured and indicates that the deed is intended to operate as provided in certain Code sections that govern deeds to secure debt. Nothing in this paragraph of the McCook

[8] See OCGA § 44-6-21 ("Every properly executed conveyance shall be construed to convey the fee unless a lesser estate is mentioned and limited in that conveyance."); 1 Pindar's Ga. Real Estate Law & Procedure § 7:6 (7th ed.) (Georgia law "presumes an intention to convey a fee from the use of a simple granting clause naming a designated grantee.").

13

security deed suggests that the parties to that deed intended to invoke the 20-year reversionary period. And our review of the remainder of the security deed shows that no other paragraph of the deed does so, either.

Because the word "forever" as used in the habendum clause of the McCook security deed refers to the duration of the estate being granted rather than the nature of the security interest and there being no other indication that the parties intended to invoke the 20-year reversionary period for deeds to secure debt, we conclude that the seven-year default period applies in this case. The undisputed facts of the case show that title to the McCook security deed was conveyed on July 1, 2002, and recorded one day later; the deed therefore reverted to McCook, Jr., on July 2, 2009, at the latest, seven years after the conveyance of the McCook security deed. All of McCook, Sr.'s claims rely upon the continuing validity of his security interest in the premises. Without a secured interest in the premises, McCook, Sr.'s claims therefore must fail as a matter of law. The trial court therefore erred by denying Vineville's motion to dismiss because the allegations of McCook, Sr.'s complaint, even when construed in the light most favorable to McCook, Sr., disclose with certainty that he would not be entitled to relief under any state of provable facts.

2. Vineville's remaining enumerations of error regarding the propriety of the trial court's interlocutory injunction have been withdrawn and are mooted by our decision in Division 1.

*Judgment reversed. Barnes, P. J., and Boggs, J., concur.*