**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 8, 2022**

# In the Court of Appeals of Georgia

A21A1366. GRIGGS v. MILLER et al.

MCFADDEN, Presiding Judge.

Joyce Griggs appeals from the trial court's grant of a declaratory judgment to Gregory Miller, who is acting in his capacities as the executor of the estate of John Miller and as the trustee for Dorothy Miller (collectively, "Miller"). In the order on appeal, the trial court held that Miller could "proceed with foreclosure proceedings pursuant to the terms of the [s]ecurity [d]eed" in which Griggs conveyed title of real property to John Miller as security for an indebtedness. Griggs argues that this ruling was error because the title conveyed to Miller by the security deed had reverted back to Griggs under OCGA § 44-14-80. That statute provides for "'an automatic reverter of title to land described in a security deed after seven years from the maturity date of the debt secured thereby or 20 years if the parties so expressly agree in writing in

the security deed.'" *Matson v. Bayview Loan Servicing*, 339 Ga. App. 890, 891 (1) (795 SE2d 195) (2016) (quoting 3 Daniel F. Hinkel, Pindar's Ga. Real Estate Law & Procedure § 21.67 (7th ed. 2015)). We agree that title has reverted back to Griggs. So we reverse the order declaring that Miller may foreclose on the property.

1. *Facts and procedural history.*

The order on appeal grants Miller summary judgment on his declaratory judgment claim. "Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant." *Patel v. Columbia Nat. Ins. Co.*, 315 Ga. App. 877 (729 SE2d 35) (2012) (citations omitted).

The parties do not dispute the dispositive facts.[1] On April 20, 2006, Griggs executed a security deed in favor of John Miller, conveying to him title to land as security for an indebtedness.

_____

[1] For this reason we are not persuaded by Miller's argument that we must affirm because Griggs did not designate the oral argument hearing transcript for transmission on appeal. See generally *Sapp v. Canal Ins. Co.*, 288 Ga. 681, 686 (3) (706 SE2d 644) (2011) (rejecting position "that a hearing transcript is always necessary to resolve appeals arising from a trial court's determination on summary judgment").

2

The security deed contained an open-end or dragnet clause — "a clause in a security deed that provides that the deed 'shall also secure any other debt or obligation that may be or become owing by the mortgagor or grantor.' OCGA § 44-14-1 (b)." *Bell v. Freeport Title & Guar.*, 355 Ga. App. 94, 100 (2) (b) n. 5 (842 SE2d 565) (2020) (punctuation omitted). That clause provided:

> *SECURED INDEBTEDNESS; FUTURE ADVANCES.* This mortgage shall secure (a) the initial indebtedness of Mortgagor (and each of them, if more than one) to Mortgagee, as evidenced by a negotiable Promissory Note of even date herewith, executed by Mortgagor and payable to Mortgagee, in the amount specified above, (b) any future advances made by Mortgagee to Mortgagor (or any of them, if more than one), and (c) all other indebtedness of Mortgagor (and each of them, if more than one) to Mortgagee, however and wherever incurred or evidenced, whether primary, secondary, direct, indirect, absolute, contingent, sole, joint or several, due or to become due, or which may be hereafter contracted or acquired, whether arising in the ordinary course of business or otherwise. The total amount of indebtedness secured hereby may decrease or increase from time to time, to the total amount due Grantee, including any advances for taxes, insurance, levies, maintenance, repair, protection and preservation of the mortgaged property, with all interest thereon, as well as additional cash advanced to Grantor, and interest thereupon.

It further provided:

This conveyance is also intended to secure not only said debt and interest, and any renewal thereof, in whole or in part (to be made solely at the option of said grantee(s)[)], but shall also secure all obligations and covenants herein set out and all sums due or hereafter to become due hereunder, AND ALSO any other indebtedness or liability now owing or hereafter created by the grantor(s) to the grantee(s) at any time between the date of this deed and the cancellation of record or foreclosure hereof in any amount or amounts unlimited and this security shall be effective to cover all future indebtedness, notwithstanding the sale, mortgage or encumbrance by the grantor(s) of his equity in said property.

The deed set a fixed maturity date for the loan twelve months later on April 20, 2007. The parties later renewed the loan for an additional twelve months with a fixed maturity date of April 20, 2008. It appears from the record (and the parties do not dispute) that this renewal was not recorded until 2018.

Griggs failed to pay off the indebtedness by the due date, and in October 2008 John Miller initiated a foreclosure proceeding. He withdrew that proceeding after Griggs informed him that she was on active military duty. See generally 50 USC § 3953 (imposing limits on actions to enforce obligations "secured by a mortgage, trust deed, or other security in the nature of a mortgage" during and in the year following a servicemember's period of military service).

4

Griggs's active military duty ended in September 2013. Later that year Miller began a second foreclosure proceeding but withdrew it so that the parties could work out a payment plan. Finally, on November 15, 2017, Miller initiated a third foreclosure proceeding.

Griggs then filed a petition to quiet title to the property, asserting that, pursuant to OCGA § 44-14-80, title to the property had reverted to her in 2015, seven years after the maturity date of the renewed loan. Miller filed a counterclaim seeking, among other things, a declaratory judgment that he had a right to foreclose on the property. He filed a motion for summary judgment on the declaratory judgment claim, arguing that the statutory reversionary period — whether seven or twenty years — had been tolled.

The trial court granted Miller summary judgment on the declaratory judgment claim, holding alternatively that the applicable reversionary period was twenty years and that, even if it was seven years, the reversionary period was tolled. This appeal followed. As detailed below, we conclude that the applicable reversionary period was seven years and that this period was not tolled. Consequently, the title to the property reverted back to Griggs and Miller cannot foreclose upon the property.

2. *The applicable reversionary period was seven years.*

Griggs's argument that Miller no longer has title to the property rests on OCGA § 44-14-80, which, as stated above, provides for the automatic reversion of title to land, as a matter of law, under certain circumstances. See *Vineville Capital Group v. McCook*, 329 Ga. App. 790 (766 SE2d 156) (2014) (reversion of title under OCGA § 44-14-80 occurs as a matter of law). Under OCGA § 44-14-80,

> Georgia's default reversion[ary] period for real property conveyed to secure a debt is seven years from the debt's maturity date unless "the parties by affirmative statement contained in the record of the conveyance intend to establish a perpetual or indefinite security interest in the real property conveyed to secure a debt or debts." OCGA § 44-14-80 (a) (1). Therefore, under the plain language of this statute, any intent to create a perpetual and indefinite security interest must appear by an *affirmative statement* in the deed.

*Bell*, 355 Ga. App. at 99 (2) (b) (citation and punctuation omitted; emphasis in original).

Miller argues that the security deed's open-end or dragnet clause contained such an affirmative statement. But we have held that where, as here, a security deed and any renewals contain a fixed maturity date, an open-end or dragnet clause alone is not an affirmative statement of the parties' intent to create a perpetual or indefinite security interest. See *Bell*, 355 Ga. App. at 100 (2) (b) ("this [c]ourt has been clear

6

that the existence of an open-end clause in conjunction with a fixed maturity date, by itself, does not constitute an affirmative statement of a perpetual or indefinite security interest that would dictate the Code's 20-year reversion period"); *Mike's Furniture Barn v. Smith*, 342 Ga. App. 558, 561-563 (2) (803 SE2d 800) (2017) (holding that "an open-end clause *may* constitute an affirmative statement of a perpetual or indefinite security interest that would create the 20-year reversionary period under OCGA § 44-14-80[, b]ut we have never held that it *must*[,]" and concluding that a deed with an open-end clause and a fixed maturity date lacked the necessary affirmative statement of intent to create a perpetual or indefinite security interest) (emphasis in original).

Miller, however, argues that the open-end clause in this case *did* constitute such an affirmative statement of intent because it is akin to the revolving line of credit that we held demonstrated the parties' intent to establish a perpetual or indefinite security interest in *Stearns Bank v. Mullins*, 333 Ga. App. 369 (776 SE2d 485) (2015). But the security deed in *Stearns Bank* was materially different from the security deed in this case.

In *Stearns Bank*, the security deed showed on its face that the parties intended to create a revolving line of credit. *Stearns Bank*, 333 Ga. App. at 488. A "[r]evolving

7

loan account" is a statutorily defined term, see OCGA § 44-14-3 (a) (6), and we explained in *Stearns Bank* that, under such an arrangement,

> the debtor must do more than simply pay the amount due in order to be entitled to have an associated security instrument canceled of record. Rather, in the case of a revolving loan account, the debt shall be considered to be "paid in full" only when the entire indebtedness including accrued finance charges has been paid *and the lender or debtor has notified the other party to the agreement in writing that he or she wishes to terminate the agreement pursuant to its terms.*

*Stearns Bank*, 333 Ga. App. at 372 (1) (citations omitted; emphasis in original). We noted that "[t]his character of revolving debt [was] reflected in the express provision in the security deed at issue in [that] case that, even if [the debtor] reduced the debt 'to a zero balance,' the security deed would remain in effect 'until released.'" Id.

By contrast, the security deed in this case did not require that Griggs notify Miller of her desire to terminate the agreement before her debt would be considered "paid in full." Nor did the security deed provide that it would remain in effect until released, even if Griggs reduced the debt to a zero balance. To the contrary, the security deed in this case provided that, "[u]pon the payment of the indebtedness secured hereby and the performance of all of the covenants and provisions of this instrument by [Griggs, Miller] *will* reconvey said property to [Griggs.]" (Emphasis

8

supplied.) And it provided that "[t]he payment in full of the loan amount in this [s]ecurity deed will *also* satisfy and release [property in another county also used to secure the indebtedness and subject to a separate security deed]" (emphasis supplied), which implies that, unlike in *Stearns Bank*, payment in full constituted a "release" of the security interest.

This is consistent with law providing that, generally, a security deed is released when the indebtedness is paid in full, notwithstanding the presence of an open-end or dragnet clause in the deed. See *Northwest Carpets v. First Nat. Bank*, 280 Ga. 535, 537-538 (1) (630 SE2d 407) (2006) (an open-end or dragnet clause in a security deed is "effective only so long as there exists indebtedness between the grantor and the grantee" and "if there was not a valid renewal or extension of the note in place [when the grantor paid off the loan], then satisfaction of the debt would release the security deed"; but contrasting "a security deed given in connection with an ongoing line of credit[,] in which the security deed's 'dragnet' clause expressly provided that total repayment of the original debt would not operate to extinguish the deed to secure debt").

The security deed's reference to being "cancell[ed] of record" does not mean that the deed remains in effect even after the indebtedness is paid in full, as Miller

9

asserts. Once the debt was paid in full Miller had a statutory duty to cancel the deed of record. See OCGA § 44-14-3 (b) (2) (the grantee must arrange for a security deed to be cancelled of record within 60 days after it is paid in full).

Because the security deed in this case does not establish a revolving loan account, our decision in *Stearns Bank* is inapposite. See *Bell*, 355 Ga. App. at 100 (2) (b). Instead, "[g]iven the fixed maturity date in the [d]eed, with a loan for a sum certain rather than a revolving line of credit, we conclude that the [d]eed lacks an affirmative statement of intent to create a perpetual and indefinite security in interest in the property." *Mike's Furniture Barn*, 342 Ga. App. at 563 (2). See also *Bell*, 355 Ga. App. at 100 (2) (b). So, under OCGA § 44-14-80 (a) (1), the seven-year reversionary period applies.

3. *The reversionary period was not tolled.*

OCGA § 44-14-80 (a) (3) provides "that foreclosure by an action or by the exercise of power of sale, *if started prior to reversion of title*, shall prevent the reversion if the foreclosure is completed without delay chargeable to the grantee or the grantee's heirs, personal representatives, successors, or assigns." (Emphasis supplied.) By its terms, this provision does not apply here, because it is undisputed that the foreclosure at issue was not started prior to the running of the seven-year

reversionary period. Miller withdrew the two foreclosure proceedings that he had begun before the running of the reversionary period.

OCGA § 44-14-80 contains no other language that prevents reversion of title as a matter of law at the expiration of the applicable time period. Nevertheless, the trial court held and Miller argues that the reversionary period was tolled. We disagree.

In this case, the trial court held that the foreclosure proceedings initiated (and then withdrawn) by Miller in 2008 and 2013 tolled the reversionary period. In support of this holding, the trial court relied on an unpublished decision of the Northern District of Georgia. That decision, *Lackey v Bank of America*, Case No. 1:16-cv-1732-MHC, 2017 U. S. Dist. LEXIS 161713 (N. D. Ga. 2017), held that the reversionary period contained in OCGA § 44-14-80 (a) is a "statute of limitations" subject to tolling under OCGA § 44-14-85 (a). Id. at *12 (IV).

But the reversionary period contained in OCGA § 44-14-80 (a) is not a limitations period. As our Supreme Court has explained, a limitations period is "a statutory period after which a lawsuit or prosecution cannot be brought in court." *Pub. Safety v. Ragsdale*, 308 Ga. 210, 211 (839 SE2d 541) (2020) (citation and punctuation omitted). Our Supreme Court has "described a statute of limitation as a

11

rule limiting the time in which a party may bring an action for a right which has already accrued." Id. at 213 (citation and punctuation omitted).

The reversionary period in OCGA § 44-14-80 (a) performs a different function than a statute of limitation: it establishes a time period after which "title to real property conveyed by a security deed that has not been cancelled or foreclosed upon . . . reverts to the grantor as a matter of law." *Vineville Capital Group*, 329 Ga. App. at 790. Because the reversionary period is not a statute of limitation, statutory tolling provisions applicable to statutes of limitation, such as the tolling provisions in OCGA § 44-14-85 (a), do not toll the reversionary period. Cf. *Ragsdale*, 308 Ga. at 212-213 (because a statutory ante litem notice performs a different function than a statute of limitation, the statutory tolling provisions applicable to statutes of limitation do not toll the ante litem notice period).

For the same reason, Miller's argument that the federal Servicemember's Civil Relief Act tolls the reversionary period also fails. The section of that law cited by Miller, by its terms, provides for the tolling of *statutes of limitation* during military service. See 50 USC § 3936 (a). As our Supreme Court held in addressing a predecessor statute, it "merely tolls all statutes of limitation 'for the bringing of any action or proceeding in any court.' It does not toll a statute that provides for the

12

automatic reverter of title to land." *Newman v. Newman*, 234 Ga. 297, 299 (216 SE2d 79) (1975).

We also are unpersuaded by Miller's argument that it would be "manifestly unjust" not to toll the reversionary period during the period of Griggs's military service because the Servicemember's Civil Relief Act "effectively barred" foreclosure actions during that period. While the Act generally prevents foreclosures "made during, or within one year after, the period of [a] servicemember's military service[,]" 50 USC § 3953 (c), it permits such foreclosures upon court order. 50 USC § 3953 (c) (1). So lenders in Miller's position are not left without legal recourse.

4. *Effect of the seven-year reversionary period in this case.*

Because the seven-year reversionary period applies to this case and was not tolled, title to the property reverted to Griggs "at the expiration of seven years from the maturity of the debt[.]" OCGA § 44-14-80 (a) (1). The recorded security deed established a maturity date of April 20, 2007. Because the renewal providing for a one-year extension of the maturity date apparently was not recorded, title to the property reverted to Griggs seven years after that original maturity date, see *Bell*, 355 Ga. App. at 99 (2) (a), which was before Miller initiated the 2017 foreclosure proceeding that is currently pending. (Title also would have reverted before Miller

13

initiated the 2017 foreclosure proceeding if the seven-year period was calculated from the April 20, 2008 maturity date provided for in the renewal.)

After title reverts to a grantor, "[n]o action to foreclose and no action to recover property under a conveyance of real property to secure debt shall be commenced and no power contained in or conferred by a conveyance of real property to secure debt shall be exercised[.]" OCGA § 44-14-83. Consequently, the trial court erred in holding that Miller could proceed with foreclosure proceedings.

*Judgment reversed. Rickman, C. J., and Senior Appellate Judge Herbert E. Phipps concur.*