**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 7, 2023**

# In the Court of Appeals of Georgia

A23A0442. FREEPORT TITLE & GUARANTY, INC., AS TRUSTEE OF THE 1080 BETHLEHEM CHURCH TRUST v. BRASWELL et al.

PHIPPS, Senior Appellate Judge.

In this quiet title action, petitioner Freeport Title & Guaranty, Inc., as Trustee of the 1080 Bethlehem Church Trust, appeals from the grant of summary judgment to respondent Katherine Braswell, individually and as executor of the estate of her late husband John Braswell. Freeport contends that the trial court erred when it found that the security deed to the property at issue was subject to a twenty-year reversionary period, rather than a seven-year period. For the reasons that follow, we disagree and affirm.

Viewed in the light most favorable to nonmovant Freeport, see *Henry v. Griffin Chrysler Dodge Jeep Ram*, 362 Ga. App. 459, 460 (868 SE2d 827) (2022), the record

shows that John and Katherine Braswell conveyed the real property at issue in this action to Apex Drywall, Inc. via a warranty deed on June 28, 2004. That same day, Apex executed a security deed to the property in favor of the Braswells as collateral for an $80,000 loan made to Apex by the Braswells with a maturity date of September 28, 2004. The deed contains an "open-end" or "dragnet" clause[1] providing, in relevant part, as follows:

> This instrument . . . is made and intended to secure the payment of the indebtedness of Grantor to Grantee evidenced by the Note in accordance with the terms thereof, together with any and all other indebtedness now owing or which may hereafter be owing by Grantor to Grantee, however incurred[,] and all renewal or renewals and extension or extensions of the Note or other indebtedness, either in whole or in part . . . .

---

[1] "An 'open-end' or 'dragnet' clause is a clause in a security deed that provides 'that, in addition to securing the debt named or described in the instrument,' the deed 'shall also secure any other debt or obligation that may be or become owing by the mortgagor or grantor.'" *Mike's Furniture Barn v. Smith*, 342 Ga. App. 558, 561 (2) (803 SE2d 800) (2017) (quoting OCGA § 44-14-1 (b)). If the security deed contains such a clause, the security interest continues to be effective as long as any indebtedness exists between the grantor and the grantee. Id.; *Martin v. Fairburn Banking Co.*, 218 Ga. App. 803, 804 (3) (463 SE2d 507) (1995). It therefore operates as an exception to the general rule "regarding instantaneous extinction of the deed and reconveyance to the grantor upon satisfaction of a debt." *Martin*, 218 Ga. App. at 804 (3) (citation and punctuation omitted); see OCGA §§ 44-14-3 (b); 44-14-60; 44-14-67.

Immediately thereafter, the deed provides, "It is the purpose of this instrument to operate as a continuing security deed, and [it] shall secure any indebtedness in favor of Grantee created at any time before this instrument is actually cancelled."

When Apex defaulted on the debt, instead of foreclosing, Katherine Braswell chose to rent out the property to a third-party tenant and "keep the property up" to satisfy the debt.[2] In March 2020, Apex executed a quitclaim deed purporting to convey the property to Freeport. On April 7, 2020, however, Braswell exercised the power of sale granted in the security deed and acquired the property for $80,000.

Two days later, Freeport instituted this quiet title action, seeking, in relevant part, a decree that it is vested with fee simple title to the property. Braswell answered and asserted several counterclaims and third-party claims that are not at issue on appeal. Freeport thereafter moved for partial summary judgment on its quiet title claim, contending that: (i) under OCGA § 44-14-80, title to the property reverted to Apex in 2011, seven years after the maturity date of the debt in the security deed; and (ii) as a result, Braswell's deed under power of sale was a nullity. Braswell cross-moved for summary judgment, asserting that, because the security deed created a

---

[2] John Braswell died sometime before December 3, 2004, as Katherine Braswell was appointed the executor of his estate on that date. It appears that Apex either never took possession of the property or vacated it before it was rented out.

3

continuing and indefinite security interest, a 20-year reversionary period applies. Thus, she argued, title had not yet reverted to Apex before she lawfully exercised the security deed's power of sale.

The trial court denied Freeport's motion and granted Braswell's motion. The court rested its decision primarily on the security deed provision stating that its purpose was "to operate as a continuing security deed" and secure any indebtedness in favor of Braswell created at any time before the deed is "actually cancelled." According to the court, that provision would be "rendered meaningless" unless the parties intended to create "a perpetual security interest persisting until the deed is actually cancelled through fulfillment of its terms." As a result, the court found, a 20-year reversionary period applies here, and, because Apex never satisfied its $80,000 debt, no reversion occurred, Braswell validly exercised the power of sale under the security deed, and Freeport therefore has no claim to the property. This appeal followed.

Freeport contends that the trial court erred when it concluded that the interest conveyed by the security deed did not revert to Apex seven years after the debt matured. Applying de novo review, we disagree. See *Henry*, 362 Ga. App. at 460 ("We review de novo a grant or denial of summary judgment, viewing the evidence

and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant."); *Vineville Capital Group v. McCook*, 329 Ga. App. 790, 794 (1) (b) (766 SE2d 156) (2014) ("The construction of a deed presents a question of law[,] which this Court reviews de novo.") (citation and punctuation omitted).

> The cardinal rule of construction of deeds, as well as other contracts, is to ascertain the intention of the parties. If that intention be clear from the deed and circumstances of the transaction and contravenes no rule of law, it should be enforced. The whole instrument is to be construed together so as to give effect, if possible, to the entire deed[,] and the construction which will uphold a deed in whole and in every part is to be preferred.

*Vineville Capital Group*, 329 Ga. App. at 794-795 (1) (b) (citations and punctuation omitted).

Under Georgia law, real property conveyed by a security deed that has not been cancelled or foreclosed upon after a certain period of time will revert to the grantor

> at the expiration of seven years from the maturity of the debt or debts or the maturity of the last installment thereof as stated or fixed in the record of the conveyance . . . ; provided, however, that where the parties by affirmative statement contained in the record of conveyance intend to establish a perpetual or indefinite security interest in the real property

5

conveyed to secure a debt or debts, the title shall revert at the expiration of the later of (A) seven years from the maturity of the debt or debts or the maturity of the last installment thereof as stated or fixed in the record of conveyance . . . ; or (B) 20 years from the date of the conveyance as stated in the record . . . .

OCGA § 44-14-80 (a) (1). "Therefore, under the plain language of this statute, any intent to create a perpetual and indefinite security interest must appear by an *affirmative statement* in the deed." *Bell v. Freeport Title & Guar.*, 355 Ga. App. 94, 99 (2) (b) (842 SE2d 565) (2020) (citation and punctuation omitted). "[I]f title has reverted to the grantor under this statute, all actions to foreclose upon and to recover the property are barred." Id. at 98 (2) (a) (citation and punctuation omitted).

Notably, an open-end or dragnet clause operates as an exception to the general rule that, upon satisfaction of a secured debt, a security deed is extinguished, and title reverts to the grantor. *Martin v. Fairburn Banking Co.*, 218 Ga. App. 803, 804 (3) (463 SE2d 507) (1995). And such a provision also may, under certain circumstances, "constitute an affirmative statement of a perpetual or indefinite security interest that would create the 20-year reversionary period." *Mike's Furniture Barn v. Smith*, 342 Ga. App. 558, 561 (2) (803 SE2d 800) (2017).

6

It is true, as Freeport urges, that "the existence of an open-end clause in conjunction with a fixed maturity date, by itself, does not constitute an affirmative statement of a perpetual or indefinite security interest that would dictate the Code's 20-year reversion period." *Bell*, 355 Ga. App. at 100 (2) (b). As highlighted by the trial court, however, the security deed in this case goes further by adding an affirmative provision to the effect that the deed is "to operate as a *continuing* security deed" that "shall secure any indebtedness in favor of Grantee created at any time before [the deed] is *actually cancelled*." (Emphases supplied.) Freeport's reading of the security deed would impermissibly render that provision superfluous, given the immediately preceding dragnet clause. See *Horwitz v. Weil*, 275 Ga. 467, 468 (569 SE2d 515) (2002) ("The courts should avoid any construction that renders portions of the contract language meaningless.") (citation and punctuation omitted); see also OCGA § 13-2-2 (4) ("The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part[.]"); *Vineville Capital Group*, 329 Ga. App. at 795 (1) (b) (a deed should be construed to give effect to each of its provisions). When viewed in conjunction with the entire agreement, including the dragnet clause, the provision

7

following that clause affirmatively shows an intent to establish a "continuing," — i.e., "perpetual or indefinite" — security interest in the property conveyed until the deed is "actually cancelled." See OCGA § 44-14-80 (a) (1).

Relying on several decisions of this Court, Freeport argues that the seven-year reversionary period applies here because the security deed has a fixed maturity date and secures a fixed-amount loan. See *Griggs v. Miller*, 363 Ga. App. 82, 84, 85-87 (1) (870 SE2d 578) (2022) (finding no intent to establish a perpetual or indefinite security interest where a security deed secured any indebtedness or liability "now owing or hereafter created by the grantor(s) to the grantee(s) at any time between the date of [the] deed" and its "cancellation of record or foreclosure" but also "set a fixed maturity date for the loan"); *Bell*, 355 Ga. App. at 99-100 (2) (b) (finding no intent to create a perpetual or indefinite security interest in a security deed containing a dragnet clause and a "fixed maturity date for a loan of a specific sum"); *Matson v. Bayview Loan Servicing*, 339 Ga. App. 890, 892-893 (1) (795 SE2d 195) (2016) (finding no intent to establish a perpetual or indefinite security interest where a security deed stated that "it secured all renewals, extensions and modifications of the Note" but also "referenced a date certain for the maturity of the Note") (punctuation

8

omitted). But those decisions are distinguishable because none involved additional language, present here, showing an intent to create a "continuing" security interest effective until the deed is "actually cancelled."

Finally, Freeport maintains that we found "almost identical language" was insufficient to show an intent for perpetual duration in *Griggs*, 363 Ga. App. 82. But as stated above, there is no indication that the security deed in *Griggs* contained the operative language found here, evidencing an intent to create a "continuing" security interest until the deed is "actually cancelled." In that regard, the language in this case is more akin (although certainly not identical) to a provision in the security deed in *Stearns Bank v. Mullins*, 333 Ga. App. 369, 371, 372 (1) (776 SE2d 485) (2015), stating that the secured debt involved a "revolving line of credit" and that the deed would remain effective "until released" even if the debt were reduced to zero, which, we found, showed an intent to create an "indefinite arrangement."

For the above reasons, the trial court did not err when it concluded that: (i) the security deed here contains an affirmative statement showing an intent to create a perpetual security interest; (ii) as a result, a 20-year reversionary period applies; and (iii) Braswell therefore validly exercised the deed's power of sale in April 2020, less

9

than 20 years after the 2004 conveyance. See OCGA § 44-14-80 (a) (1). Consequently, we affirm the trial court's judgment.

*Judgment affirmed. Doyle, P. J., and Gobeil, J., concur.*