**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 9, 2015**

# In the Court of Appeals of Georgia

A15A0717. STEARNS BANK, N. A. v. MULLINS.

ELLINGTON, Presiding Judge.

Frances Louise Hawkins filed an action in the Superior Court of Pickens County against her ex-husband, Boyd Lee Mullins, Jr., seeking to hold him in contempt for failing to convey certain real property to her, as provided by their divorce decree. In addition, Hawkins asked the trial court to compel Jasper Banking Company, the holder of a security deed on the property, to release any liens or encumbrances that prevented Mullins from making the conveyance to her. Mullins filed a motion to set aside the security deed. After a hearing, the trial court determined that a seven-year reversionary period applied to the security deed, which period had elapsed, granted Mullins's request to set aside on the basis that title had reverted to him, and entered a decree cancelling the security deed of record. Stearns Bank, N.A.,

as Jasper Banking Company's successor-in-interest, then filed an application for interlocutory appeal, and we granted the application.[1] On appeal, the bank contends the trial court erred because, instead of a seven-year period, a twenty-year reversionary period applies, which period has not elapsed, and therefore the bank is still entitled to hold the deed as security for Mullins's outstanding indebtedness. For the reasons explained below, we reverse.

With regard to the reversion of title conveyed under a deed to secure debt, OCGA § 44-14-80, as amended in 1994, provides generally for reversion after seven years.[2] Parties to a particular conveyance can opt in to a twenty-year reversionary

---

[1] Initially, this Court determined that the bank's application for interlocutory appeal invoked the exclusive jurisdiction of the Supreme Court of Georgia and transferred the application to that Court. Ga. Const. 1983, Art. 6, Sec. 6, Paras. 2, 3. The Supreme Court determined that, because the issue on appeal is not whether Mullins is in contempt of the divorce decree but whether the trial court erred in finding that the security deed should be set aside, the application failed to invoke its subject matter jurisdiction, and the Court returned the application to this Court. The Supreme Court's jurisdictional analysis likewise controls this resulting appeal.

[2] Prior to 1994, when the General Assembly amended OCGA § 44-14-80, a twenty-year reversionary period applied to all deeds to secure debt, and title conveyed under a deed to secure debt reverted to the grantor after twenty years from the maturity date of the instrument, or, if no maturity date was specified, twenty years from the date of the instrument. See Ga. L. 1941, p. 487, §§ 1, 2; Ga. L. 1953, Nov.-Dec. Sess., p. 313, § 1; Ga. L. 1994, p. 1943, 1953, § 13; OCGA § 44-14-80 (1993); see generally Frank S. Alexander, *Ga. Real Estate Finance and Foreclosure Law*, § 2:7 (database updated October 2014); Susan M. Gordon, "Mortgages, Conveyances to Secure Debt, and Liens: Provide for

2

period, however, which shall apply "where the parties by affirmative statement contained in the record of conveyance intend to establish a perpetual or indefinite security interest in the real property conveyed to secure a debt or debts[.]" OCGA § 44-14-80 (a) (1), (2).[3] See Gordon, 12 Ga. St. U. L. Rev. 313, 314-317 (1995); Daniel

_____

Shortened Reversionary Period for Secured Property; Provide for Notice to Prospective Purchaser of Potential Nuisances by Grantor, Owner, or Agent of Property," 12 Ga. St. U. L. Rev. 313 (1995); Eleanor L. Grossman, 3 *Ga. Jurisprudence, Property*, § 23:87 (updated March 2015); Daniel F. Hinkel, 3 *Pindar's Ga. Real Estate Law & Procedure*, § 21:40 (7th ed., updated April 2015); Daniel F. Hinkel, *Ga. Real Estate Title Examinations And Closings*, § 2:34 (updated August 2014); *Ga. Real Estate Finance & Foreclosure Law*, § 2:7.

[3] In full, OCGA § 44-14-80 (a) provides:
Title to real property conveyed to secure a debt or debts shall revert to the grantor or the grantor's heirs, personal representatives, successors, and assigns as follows:
(1) Title to real property conveyed to secure a debt or debts shall revert to the grantor or his or her heirs, personal representatives, successors, and assigns at the expiration of seven years from the maturity of the debt or debts or the maturity of the last installment thereof as stated or fixed in the record of the conveyance or, if not recorded, in the conveyance; provided, however, that where the parties by affirmative statement contained in the record of conveyance intend to establish a perpetual or indefinite security interest in the real property conveyed to secure a debt or debts, the title shall revert at the expiration of the later of (A) seven years from the maturity of the debt or debts or the maturity of the last installment thereof as stated or fixed in the record of conveyance or, if not recorded, in the conveyance; or (B) 20 years from the date of the conveyance as stated in the record or, if not recorded, in the conveyance;
(2) If the maturity of the debt or debts or the maturity of the last installment thereof is not stated or fixed, title to real property conveyed to secure a debt or debts shall revert at the expiration of seven years from the date of the

F. Hinkel, *Ga. Real Estate Title Examinations And Closings*, § 2:34 (updated August 2014).

This case concerns a deed to secure debt that was granted on June 2, 1995, and is therefore subject to a seven-year reversionary period pursuant to OCGA § 44-14-80 (a), unless the parties opted to establish a perpetual or indefinite security interest. The record shows that on that date Mullins established an open-ended line of credit with the bank and executed a "Deed to Secure Debt, with Future Advance Clause," as to a 21.88 acre tract of real property in Pickens County. The security deed defined the "Secured Debt" as the first loan that Mullins took under the line of credit ($140,100 for a one-year term, to mature on June 2, 1996) as well as any "extensions, renewals,

conveyance as stated in the record or, if not recorded, in the conveyance; provided, however, that where the parties by affirmative statement contained in the record of conveyance intend to establish a perpetual or indefinite security interest in the real property conveyed to secure a debt or debts, the title shall revert at the expiration of 20 years from the date of the conveyance as stated in the record or, if not recorded, in the conveyance; or
(3) If the maturity is not stated or fixed and the conveyance is not dated, title to real property conveyed to secure a debt or debts shall revert at the expiration of seven years from the date the conveyance is recorded or, if not recorded, is delivered;
provided, however, that foreclosure by an action or by the exercise of power of sale, if started prior to reversion of title, shall prevent the reversion if the foreclosure is completed without delay chargeable to the grantee or the grantee's heirs, personal representatives, successors, or assigns.

modifications or substitutions" of the original evidence of debt and included a so-called "dragnet" or "open-end" clause that included in the secured debt all future obligations of Mullins to the bank under any note or other evidence of debt. In Paragraph 16, entitled "Expenses; Advances on Covenants; Attorneys' Fees; Collection Costs," Mullins agreed to pay the bank's expenses in the event he breached certain covenants or the bank collected the debt through an attorney. That paragraph also provided: "This Security Instrument shall remain in effect until released. [Mullins] agrees to pay for any recordation costs of such release." In Paragraph 26, regarding "Other Terms," the deed provided: "The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released." The bank filed the deed to secure debt, and it was recorded on June 13, 1995.

Hawkins and Mullins were divorced on December 13, 1999. The decree incorporated a settlement agreement executed November 1, 1999, which stated that a 5-acre tract of real property that included the marital home was titled in Mullins's name. The settlement agreement provided that Mullins would convey the 5-acre tract

to Hawkins. The 5-acre tract was a portion included within the 21.88-acre tract encumbered by the 1995 deed to secure debt.

In moving to set aside the 1995 deed to secure debt, Mullins argued, inter alia, that pursuant to OCGA § 44-14-80 title to the secured property reverted back to him no later than June 2, 2003, seven years from the date of maturity of the original evidence of debt. The trial court acknowledged that an open-end clause or dragnet clause could create a perpetual or indefinite security interest subject to a twenty-year reversion period under OCGA § 44-14-80. The trial court rejected the bank's argument that its deed to secure debt created such a perpetual or indefinite security interest based *only* on its finding that the bank "never recorded the deed to secure debt until after the seven year reversion to [Mullins] lapsed on or around June 2003."

1. The bank contends that the June 2, 1995 security deed contained affirmative statements that the parties intended to establish a perpetual or indefinite security interest in the real property conveyed to secure debts. The bank argues that pursuant to OCGA § 44-14-80 (a) (1) the applicable reversion period is twenty years from the date of the conveyance. The bank contends that the trial court therefore erred in ruling that title reverted to Mullins seven years after the original maturity date of the debt. "The construction of a deed presents a question of law which the appellate court

6

reviews de novo. In construing a deed, the court's overriding goal is to ascertain and give effect to the intent of the parties." (Citations, punctuation, and footnote omitted.) *Wilkes v. Fraser*, 324 Ga. App. 642, 643 (751 SE2d 455) (2013).

The June 2, 1995 security deed on its face shows that the parties intended to create a revolving line of credit. By definition, a revolving line of credit is an indefinite arrangement.[4] Under a revolving credit arrangement, the debtor must do more than simply pay the amount due in order to be entitled to have an associated security instrument canceled of record.[5] Rather, "[i]n the case of a revolving loan

---

[4] OCGA § 44-14-3 (a) (6) defines a "[r]evolving loan account" as
an arrangement between a lender and a debtor for the creation of debt pursuant to an agreement secured by an instrument and under which:
(A) The lender may permit the debtor to create debt from time to time;
(B) The unpaid balances of principal of such debt and the loan finance and other appropriate charges are debited to an account;
(C) A loan finance charge is computed on the outstanding balances of the debtor's account from time to time;
(D) The debtor agrees to repay the debt and accrued finance charges in accordance with the written agreement with the lender; and
(E) The limitation on the maximum amount which the debtor is entitled to become indebted under said arrangement between the lender and debtor is stated on the face of the instrument, and said amount shall be deemed to be notice of the maximum amount secured by the instrument.

[5] See OCGA §§ 44-14-3 (cancellation of secured instruments generally); 44-14-4 (cancellation of mortgages); 44-14-60 (obligation of the grantee of a deed to secure debt to reconvey the property upon the payment of the debt); 44-14-67 (cancellation of deeds to secure debt).

account, the debt shall be considered to be 'paid in full' only when the entire indebtedness including accrued finance charges has been paid *and the lender or debtor has notified the other party to the agreement in writing that he or she wishes to terminate the agreement pursuant to its terms*." (Emphasis added.) OCGA § 44-14-3 (b) (2). This character of revolving debt is reflected in the express provision in the security deed at issue in this case that, even if Mullins reduced the debt "to a zero balance," the security deed would remain in effect "until released." See *Dixon v. Cook Banking Co.*, 191 Ga. App. 861, 862-863 (2) (383 SE2d 337) (1989) (Where a security deed contained a provision that the associated promissory note was "a master note and balances outstanding will depend on draws made and payments applied" and a "future advances" clause, the debt was a revolving loan account as defined in OCGA § 44-14-3 (a) (6) and the grantors would be entitled to cancellation of the security instrument only if they notified the grantee in writing that they wished to terminate their line of credit.).[6] Certainly, it is preferable for the language used in a

---

[6] See *Martin v. Fairburn Banking Co.*, 218 Ga. App. 803, 804-805 (3) (463 SE2d 507) (1995) ("Georgia law is clear that deeds to secure debt containing open-end clauses continue to be effective so long as there exists indebtedness between the grantor and the grantee. It is also clear that the dragnet provision is a recognized exception to the general rule expressed in the statutes such as OCGA §§ 44-14-3 (b), 44-14-60, 44-14-67 regarding

8

deed to secure debt to frame the statement of intent more clearly.[7] Still, we conclude

that the security deed in this case contained a sufficient statement that the parties

intended to establish a perpetual or indefinite security interest in the real property

such that the applicable reversion period is twenty years from the date of the

conveyance. OCGA § 44-14-80 (a) (1).[8]

---

instantaneous extinction of the deed and reconveyance to the grantor upon satisfaction of a debt."); *Tedesco v. CDC Fed. Credit Union*, 167 Ga. App. 337, 339-340 (2) (306 SE2d 397) (1983) (physical precedent only) (By expressly agreeing to a provision in a deed to secure debt that the instrument would remain in full force and effect notwithstanding the satisfaction of the original debt and the existence of a zero balance, the grantor waived the right set forth in OCGA §§ 44-14-60 and 44-14-67 of cancellation of the security instrument upon payment in full of the debt.); cf. *Northwest Carpets, Inc. v. First Nat. Bank of Chatsworth*, 280 Ga. 535, 537-538 (1) (630 SE2d 407) (2006) (Where the evidence showed that the grantors of a deed to secure debt had satisfied the original indebtedness secured by the deed, and there was no evidence of any valid renewal or extension of the original note, the grantee could no longer claim any legal title to the property by virtue of a "dragnet" clause in the security deed, because a dragnet clause does not, in itself, change the fact that full payment of a secured indebtedness passes legal title back to the grantor.) (acknowledging a different result in *Tedesco v. CDC Federal Credit Union*, where the grantor expressly agreed in the deed's "dragnet clause" that total repayment of the original debt would not operate to extinguish the deed to secure debt.).

[7] In a later transaction, Mullins and a business partner granted the bank a security interest in a different parcel of real property, and that security deed included as an "additional term," "Grantor and Grantee agree, by this affirmative statement pursuant to OCGA § Section 44-14-80, to establish a perpetual or indefinite security interest in the property to secure the secured debt."

[8] Cf. *Vineville Capital Group v. McCook*, 329 Ga. App. 790, 795 (1) (b) (766 SE2d 156) (2014) (The word "forever" in the habendum clause of a security deed indicated the

9

Moreover, the record shows that Mullins obtained many additional advances from the bank – as recently as 2010 – and executed promissory notes and other documents stating that debts were secured by the June 2, 1995 security deed. He also executed two modifications of the security deed to reference additional debts, one on May 15, 2007 (recorded on May 29, 2007), and another on July 30, 2007 (recorded on August 9, 2007). Both modifications stated that, except as specifically amended, "all terms of the [June 2, 1995] Security Instrument remain in effect." Having receiving the benefit of the continuing effectiveness of the security deed, Mullins will not now be heard to argue that its effectiveness ended, and title in fee simple reverted to him, in 2003. See *Tedesco v. CDC Fed. Credit Union*, 167 Ga. App. 337, 339-340 (2) (306 SE2d 397) (1983) (physical precedent only).

Based on the foregoing, we conclude that the trial court erred in finding that title to the real property reverted to Mullins in 2003 and in granting his motion to set aside the June 2, 1995 security deed on that basis. The order is reversed, and the decree cancelling the security deed of record is vacated.

---

unlimited duration of the underlying estate and did not constitute for purposes of OCGA § 44-14-80 (a) an affirmative statement that the parties intended the security interest to be perpetual and indefinite.).

2. In light of our holding in Division 1, supra, the bank's remaining arguments are moot.

*Judgment reversed. Dillard and McFadden, JJ., concur*.