**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**December 15, 2016**

# In the Court of Appeals of Georgia

A16A1725. MATSON v. BAYVIEW LOAN SERVICING, LLC.     BO-063

BOGGS, Judge.

Jesse Matson, IV, appeals from the trial court's grant of summary judgment to Bayview Loan Servicing, LLC, ("Bayview") on his complaint alleging wrongful foreclosure. Matson asserts that the trial court erred by granting summary judgment in favor of Bayview and denying his motion for partial summary judgment on "the issue of the illegality and voidness of defendant's foreclosure." The issue in this appeal is whether the reversion provisions in OCGA § 44-14-80 precluded Bayview from exercising its rights under a security deed to foreclose upon Matson's property. For the reasons explained below, we reverse the trial court's grant of summary judgment to Bayview and affirm its denial of summary judgment to Matson.

Summary judgment is proper when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003). So viewed, the record shows that Matson purchased the subject property in 1998 through a 30-year first mortgage. In 2002, he borrowed $53,000 from First National Bank under a note with a fixed one-year term that provided for monthly payments of interest with the principal balance due at maturity. This note was secured with a security deed on the subject property that was recorded on November 6, 2002. The security deed stated that it secured a promissory note dated November 1, 2002 that Matson promised to pay in full no later than November 10, 2003. It also stated generally that "[t]his Security Instrument secures to Lender . . . the repayment of the Loan, and all renewals, extensions and modifications of the Note . . . Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the [subject] property."

The following year when the note was due, Matson renewed it for another year. Matson and First National then began a practice of renewing the note each time it

2

matured, with the last renewal taking place on March 24, 2010. Neither party has submitted evidence showing that notice of any renewal of the loan was placed in the public record following the filing of the security deed for the original note in 2002.

In February 2013, the Federal Deposit Insurance Corporation, as receiver for First National Bank, assigned its rights, title, and interest under the security deed to Bayview. Based upon Matson's failure to pay the outstanding principal and interest at the maturity of the last renewal note, Bayview exercised its power of sale on November 5, 2013 and sold the subject property on the courthouse steps.

In April 2014, Matson filed a complaint against Bayview alleging wrongful foreclosure and tortious interference with his lease contracts with tenants occupying the subject property. In this lawsuit, he sought to set aside the wrongful foreclosure, as well monetary damages, attorney fees, and punitive damages. Both parties subsequently moved for partial summary judgment in their favor on the issue of whether the foreclosure was lawful. The trial court granted summary judgment in Bayview's favor based upon its conclusion that the note renewals added an additional seven years to the reversion period pursuant to OCGA § 44-14-80 (b). On appeal, Matson asserts that the trial court erred in its analysis because the public record was

3

not supplemented to include the written renewals of the original note referenced in the security deed that was recorded in 2002.

1. In 1994, "OCGA § 44-14-80 was modified to provide for an automatic reverter of title to land described in a security deed after seven years from the maturity date of the debt secured thereby or 20 years if the parties so expressly agree in writing in the security deed." (Citations and footnotes omitted.) 3 Daniel F. Hinkel, Pindar's Ga. Real Estate Law & Procedure § 21.67 (7th ed. 2015). Subsection (b) of this Code section adds seven years[1] to the reversion period for written renewals of the secured debt if the grantee of the security deed

> shall, at any time before the title reverts as provided in subsection (a) of this Code section, make and cause to be recorded upon the record of the conveyance or elsewhere in the public records, with a notation of the place of record thereof on the record of the conveyance . . . a written renewal of the debt or debts secured or the part thereof which are not fully paid and are not barred, which renewal shall be signed by the original grantor or the grantor's heirs, personal representatives, or successors in title to the real estate conveyed and shall be dated, the conveyance and record thereof shall remain of full force and effect and the title shall not revert for an additional period of seven years or 20 years according to the appropriate reversion period stated in subsection

---

[1] Under certain specified circumstances, not applicable here, the reversion period is 20 years. See OCGA § 44-14-80 (a) (1) and (2).

(a) of this Code section from the date of the renewal unless the debt or debts are paid sooner.

OCGA § 44-14-80 (b). In this case, the record contains no evidence showing whether the written renewals of the loan were recorded as required by this subsection.[2] See *Minor v. Neely*, 247 Ga. 147, 148 (273 SE2d 853) (1981) (noting under predecessor statute, OCGA § 67-1308,[3] that written renewal of debt must be recorded to prevent title from reverting to grantor 20 years after maturation of debt secured by recorded security deed). We therefore cannot determine from the record before us whether title reverted to Matson as a matter of law on November 10, 2010, seven years after the security deed was first filed, or whether the recording of any of the subsequent loan renewals extended the reversion period.

We find no merit in Bayview's argument that the security deed included an affirmative statement evidencing an intent "to establish a perpetual or indefinite security interest in the real property conveyed to secure a debt" that extended the

---

[2]This is not a case involving an unrecorded security deed in which the written renewal can be noted or placed "upon the conveyance" itself rather than the public record. See OCGA § 44-14-80 (b).

[3] OCGA § 67-1308 is substantively identical to OCGA § 44-14-80 (b) with regard to the recording requirement for the renewal of loans secured by a recorded security deed. See 1941 Ga. L. pp. 487-488 § 1; 1953 Ga. L. pp. 313-315 § 1.

5

initial reversion period to 20 years. See OCGA § 44-14-80 (a) (1). While the security deed stated it secured "all renewals, extensions and modifications of the Note," it also referenced a date certain for the maturity of the Note. This language does not evidence an intent to establish a perpetual or indefinite security interest in the real property. Cf. *Vineville Capital Group v. McCook*, 329 Ga. App. 790, 795-796 (1) (766 SE2d 156) (2014) (use of word "forever" defined duration of estate and did not evidence intent to create perpetual or indefinite security interest with 20-year reversionary period). Compare *Stearns Bank v. Mullins*, 333 Ga. App. 369, 372-373 (1) (776 SE2d 485) (2015) (intent for perpetual or indefinite security interest established where security deed for revolving line of credit expressly provided that it would "remain in effect 'until released'" even if secured debt reduced to zero balance).

As we cannot determine from the record before us whether the reversion period was extended based upon the recording of a loan renewal, the trial court erred in granting summary judgment in Bayview's favor on the issue of wrongful foreclosure.

2. With regard to Matson's claim that he was entitled to partial summary judgment in his favor, a plaintiff "must demonstrate that there is no genuine issue of material fact as to every element of his or her claims and that the undisputed facts,

viewed in the light most favorable to the defendant, warrant judgment in the plaintiff's favor as a matter of law." (Citation and punctuation omitted.) *BAC Home Loan Servicing v. Wedereit*, 297 Ga. 313, 316 (773 SE2d 711) (2015).

In this case, Matson must make a prima facie showing that Bayview's foreclosure was unlawful. While Matson submitted evidence showing that the security deed was recorded and that seven years had passed from the maturity date of the note, the evidence also shows without dispute that the note was renewed. In the absence of evidence that these renewals were *not* placed in the public record in the manner required by OCGA § 44-14-80 (b), Matson has not yet made a prima facie showing of reversion of title and an issue of fact therefore remains with regard to Bayview's alleged wrongful foreclosure. We therefore affirm the trial court's denial of summary judgment to Matson.

*Judgment affirmed in part, reversed in part. Barnes, P. J., and Rickman, J., concur*.

7