**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE and REESE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**August 10, 2017**

# In the Court of Appeals of Georgia

A17A1162. MIKE'S FURNITURE BARN, INC. et al. v. SMITH.

MILLER, Presiding Judge.

More than seven years after appellee Cheryl Smith failed to repay a loan, appellant Mike's Furniture Barn ("MFB") foreclosed on a security deed for Smith's home. Smith filed a complaint seeking to set aside the foreclosure sale and enjoin defendants MFB, Michael Miller, Richard Plymale, and Kristine R. Moore Tarrer (collectively "the MFB Appellants")[1] from taking any further dispossessory action. The trial court found that the security deed at issue was subject to a statutory seven-year reversionary period and, therefore, title to the property had already reverted back to Smith prior to the foreclosure sale. Accordingly, the trial court set aside the

---

[1] Michael Miller is the president of MFB, Tarrer is counsel for MFB, and Plymale "cried out" the foreclosure sale. Tarrer is named as a defendant both individually and as Kristine R. Moore Tarrer, LLC.

foreclosure sale and enjoined the MFB Appellants from taking further action.[2] The MFB Appellants now appeal, and, for the reasons that follow, we affirm.

The limited record before us shows that, in October 2002, Smith borrowed $2,154.22 from MFB. Smith executed a promissory note ("the Note"), which identified the collateral merely as "[t]he goods or property being purchased," and further indicated that Smith was giving MFB a security interest in a "loan on property." The Note provided for payment in 22 installments with a maturity date of August 5, 2003. That same day, Smith executed a deed to secure a debt of $2,100 ("the Deed") in favor of "Michael G. Miller." The Deed included a description of the real property at issue and indicated that final payment on the secured debt was due on September 30, 2005.[3] Additionally, the Deed granted Miller the power of sale upon default.

Smith failed to make all of the payments owed. In 2016, more than seven years after the loan maturity date identified in either the Note or the Deed, MFB

---

[2] We have jurisdiction to consider this appeal because it involves the grant of a final injunction. See OCGA § 5-6-34 (a) (4).

[3] The Deed was recorded in Deed Book 749, pages 149-151, Greene County, Georgia Records on May 3, 2004.

commenced a non-judicial foreclosure on the property identified in the Deed and purchased the property at the foreclosure sale.

Smith filed this wrongful foreclosure action, arguing that (1) MFB was not the holder of the Deed, and (2) prior to the foreclosure, title to the property statutorily reverted to her seven years after the loan maturity date listed on the Deed. The trial court agreed, set aside the foreclosure sale, and granted Smith's request for an injunction preventing the MFB Appellants from any further attempts to foreclose on the property. This appeal followed.[4]

In three related enumerations of error, the MFB Appellants contend that the trial court erred in setting aside the foreclosure sale and granting injunctive relief to Smith because (1) the language in the Note and the Deed should be viewed together; (2) these documents show that the parties intended to extend the statutory reversionary period to 20 years; and (3) the trial court erred by limiting the ability of

---

[4] The trial court implicitly denied the MFB Appellants' counterclaims for wrongful restraint, punitive damages, and attorney fees when it set aside the foreclosure sale and granted the injunction against them. The MFB Appellants did not file a notice of appeal from the denial of their counterclaims and do not argue on appeal that the trial court erred in this regard. Additionally, the trial court did not award any of the damages or fees Smith requested in her complaint, and Smith does not appeal from or argue any error in this regard. Therefore, we do not address these issues. *Young v. Turner Heritage Homes*, 241 Ga. App. 400, 401 (2) (526 SE2d 82) (1999) (matters not enumerated as error are deemed abandoned).

3

"open-end clauses" to extend the reversionary period to 20 years only in arrangements involving revolving lines of credit.

1. We first consider whether the trial court properly set aside the foreclosure sale.[5] Under Georgia law, only the holder of the deed may initiate foreclosure proceedings. *Ames v. JP Morgan Chase Bank*, 298 Ga. 732, 741 (3) (e), n. 7 (783 SE2d 614) (2016); *You v. JP Morgan Chase Bank*, 293 Ga. 67, 69-71 (1) (743 SE2d 428) (2013). Here, Miller, and not MFB, was the holder of the Deed. Thus, MFB had no authority to initiate the foreclosure sale. *Ames*, supra, 298 Ga. at 741 (3) (e), n. 7; *You*, supra, 293 Ga. at 69-71 (1). Although a security deed can be transferred by assignment, see OCGA § 44-14-64, the record is devoid of any evidence that Miller, individually, transferred the deed to MFB. Thus, because MFB was not the holder of the Deed, it had no right to foreclose on the property, and the trial court properly set aside the foreclosure sale.

2. We next turn to the issue of injunctive relief. The trial court issued the permanent injunction after finding that title to the property reverted back to Smith after seven years because the Deed did not indicate an intent to extend this statutory reversionary period. We agree with the trial court's analysis.

_____

[5] This issue was properly raised before the trial court.

Georgia law provides that title to property used as collateral for a debt will revert to the grantor

> at the expiration of seven years from the maturity of the debt or debts or the maturity of the last installment thereof as stated or fixed in the record of the conveyance . . . ; provided, however, that where the parties by affirmative statement contained in the record of conveyance intend to establish a perpetual or indefinite security interest in the real property conveyed to secure a debt or debts, the title shall revert at the expiration of the later of (A) seven years from the maturity of the debt or debts or the maturity of the last installment thereof as stated or fixed in the record of conveyance . . . ; or (B) 20 years from the date of the conveyance as stated in the record . . . .

OCGA § 44-14-80 (a) (1). Under the plain language of this statute, any intent to create a perpetual and indefinite security interest must appear by an "*affirmative statement*" in the deed. (Emphasis supplied.) Id. If title has reverted to the grantor under this statute, all actions to foreclose upon and to recover the property are barred. OCGA § 44-14-83. Thus, the question before us is whether the Deed contained a sufficient "affirmative statement" showing the parties' intent to apply the 20-year reversionary period.

5

The construction of a deed, like any other contract, is a question of law that we review de novo. *Vineville Capital Group, LLC v. McCook*, 329 Ga. App. 790, 794 (1) (b) (766 SE2d 156) (2014).

> The cardinal rule of construction of deeds, as well as other contracts, is to ascertain the intention of the parties. If that intention be clear from the deed and circumstances of the transaction and contravenes no rule of law, it should be enforced. The whole instrument is to be construed together so as to give effect, if possible, to the entire deed[,] and the construction which will uphold a deed in whole and in every part is to be preferred.

(Citations and punctuation omitted.) Id. at 794-795 (1) (b); see also *United Bank v. West Central Ga. Bank*, 275 Ga. App. 418, 420 (620 SE2d 654) (2005) (this Court interprets a deed like any other contract, subject to the rules of contract interpretation).

The parties agree that the Note and Deed were executed contemporaneously and that the Deed provides the secured collateral for the Note. We point out, however, that these documents are vague and at times inconsistent, and the discrepancies between the Note and Deed may be read to suggest that the two documents do not

6

refer to the same loan.[6] Assuming, as all parties to this appeal and the trial court appear to do, that the two documents concern the same loan and security interest, neither the language in the Deed nor the Note, viewed independently or together, contain an affirmative statement that extends the reversionary period beyond the default seven-year term.

An "open-end" or "dragnet" clause is a clause in a security deed that provides "that, in addition to securing the debt named or described in the instrument," the deed "shall also secure any other debt or obligation that may be or become owing by the mortgagor or grantor." OCGA § 44-14-1 (b); *Clark v. AgGeorgia Farm Credit ACA*, 333 Ga. App. 73, 78 (1) (a) (775 SE2d 557) (2015) (referring to "open-end" and "dragnet" clauses interchangeably). If the security deed includes an "open-end" or "dragnet" clause, then the security interest conveyed by the deed is generally effective as long as any debt between the grantor and grantee remains unsatisfied. *Martin v. Fairburn Banking Co.*, 218 Ga. App. 803, 804 (3) (463 SE2d 507) (1995) Such a clause is an exception to "the general rule . . . regarding instantaneous extinction of

---

[6] The documents contain different loan amounts, different grantees, conflicting maturity dates, and seemingly different collateral. These discrepancies do not affect our analysis concerning the reversionary interest.

7

the deed and reconveyance to the grantor" upon satisfaction of a debt. (Citation and punctuation omitted.). Id.[7]

In some cases, this Court has held that an open-end clause *may* constitute an affirmative statement of a perpetual or indefinite security interest that would create the 20-year reversionary period under OCGA § 44-14-80. See, e.g., *Stearns Bank, N.A. v. Mullins*, 333 Ga. App. 369, 371 (776 SE2d 485) (2015) (finding affirmative statement in the deed). But we have never held that it *must*. Cf. *Matson v. Bayview Loan Servicing, LLC*, 339 Ga. App. 890, 892-893 (1) (795 SE2d 195) (2016) (concluding that security deed with open-end clause and certain maturity date did not contain affirmative statement).

The MFB Appellants contend that the Note and Deed contain dragnet clauses and establish the necessary affirmative statement to create an indefinite interest. Specifically, they point to the Note's provision explaining that the security interest in the collateral remains in existence until the debt is discharged in writing. Further, they argue that the Deed contains the following two provisions that constitute the required affirmative statement: (a) "any and all other indebtedness now owing or

---

[7] The clause at issue in *Martin* stated that the deed secured "any and all other indebtedness which said grantor may now or may hereafter owe said grantee." (Punctuation omitted.) *Martin*, supra, 218 Ga. App. at 804 (3).

8

which may hereafter be owing by Grantor to Grantee"; and (b) "all renewal or renewals and extension or extensions of the Note or other indebtedness."

Here, although the Deed contained a dragnet clause, it also identified a fixed maturity date for the secured debt. Few cases have addressed what language is required to constitute an affirmative statement that would extend the reversionary period under OCGA § 44-14-80. In *Stearns Bank*, supra, this Court held that the security deed at issue contained an affirmative statement serving to extend the reversionary period to 20 years. 333 Ga. App. at 373-374 (1). That case involved an open-ended line of credit, and the deed included a future advance clause covering "any extensions, renewals, modifications or substitutions" of the original evidence of debt. (Punctuation omitted.) Id. at 371. The deed further provided that "[a]lthough the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released." (Punctuation omitted.) Id. This Court determined that the deed, on its face, showed that the parties intended to establish a revolving line of credit and an indefinite interest in the collateral that required additional action beyond mere payment of the indebtedness to satisfy the debt. Id. at 372 (1). Specifically, this Court concluded that the language sufficiently showed that the parties intended to

9

establish a perpetual and indefinite interest within the meaning of OCGA § 44-14-80,[8]

although this Court noted that "it is preferable" for the parties to express their intent

more clearly in the deed. Id. at 373 (1).

In comparison, in *Matson*, supra, 339 Ga. App. 890, this Court concluded that

there was no affirmative statement in the security deed that would have extended the

reversionary period because, even though the deed indicated that it secured "all

renewals, extensions, and modifications of the Note," the deed also contained "a date

certain for the maturity of the Note." (Punctuation omitted.) *Matson*, supra, 339 Ga.

App. at 892-893 (1).

We conclude that the facts of this case are more akin to the facts of *Matson*,

and we are persuaded by the reasoning in that case. Although the Deed here contains

an open-end or dragnet clause, it also contained a fixed maturity date. Moreover,

unlike the transaction in *Stearns Bank*, this case did not involve a revolving line of

credit, which is, by definition, an indefinite and perpetual arrangement. See *Stearns*

---

[8] This Court in *Stearns* noted that, in a subsequent transaction, the parties added the following language: "Grantor and Grantee agree, by this affirmative statement pursuant to OCGA § [] 44-14-80, to establish a perpetual or indefinite security interest in the property to secure the secured debt." (Punctuation omitted.) *Stearns*, supra, 333 Ga. App. at 373 n. 7. Such language would certainly be helpful as evidence of an intent to extend the reversionary period.

*Bank*, supra, 333 Ga. App. at 372 (1); see OCGA § 44-14-3 (a) (6) (defining a "revolving loan account"). Given the fixed maturity date in the Deed, with a loan for a sum certain rather than a revolving line of credit, we conclude that the Deed lacks an affirmative statement of intent to create a perpetual and indefinite security interest in the property.

Even if we view the Deed together with the Note, as the MFB Appellants contend we must, we are not persuaded that the parties affirmatively evidenced their intent to extend the reversionary period in this case. The Note contains its own dragnet clause, indicating that the parties contemplated that the collateral would "secure . . . any other secured debt [Smith owed MFB] now or hereafter." Additionally, the Note specifically provides that the security interest will survive even in the absence of any debt, until formally discharged in writing. At the same time, however, the Note also contemplates a fixed maturity date as well as a set number of payments. When we compare the language in the open-end clauses, with the fixed maturity dates, set number of payments, and fixed loan amounts, we have, at the very least, conflicting terms that create an ambiguity, which cannot constitute an affirmative statement of intent. See *Clark*, supra, 333 Ga. App. at 77 (1) (a) (defining ambiguity as "duplicity, indistinctness, an uncertainty of meaning or expression used

11

in a written instrument, [as well as] being open to various interpretations") (citations and punctuation omitted).

For the foregoing reasons, we conclude that the trial court properly set aside the foreclosure sale because MFB was not the holder of the Deed and thus had no legal right to foreclose on the property. We further conclude that the trial court properly enjoined the MFB Appellants from taking any further dispossessory action because neither the Deed alone nor the Deed in conjunction with the Note includes an affirmative statement of an intent to extend the reversionary period to 20 years. Therefore, we affirm the trial court's order.

*Judgment affirmed. Doyle and Reese, JJ., concur*.