**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**May 1, 2020**

# In the Court of Appeals of Georgia

A20A0133. BELL et al. v. FREEPORT TITLE & GUARANTY, MI-005 INC., AS TRUSTEE OF THE FLAT SHOALS TOWNHOUSE DEVELOPMENT TRUST.

MILLER, Presiding Judge.

Habibah Bell and Grafton Rodriguez ("the appellants") appeal from the trial court's order granting Freeport Title & Guaranty, Inc., as Trustee of the Flat Shoals Townhouse Development Trust's ("Freeport Title") renewed motion for summary judgment in its quiet title action. The appellants argue that the grant of summary judgment was improper because (1) they were not provided an opportunity to conduct additional discovery; and (2) there is a genuine issue of material fact regarding the underlying loan agreement. For the reasons that follow, we affirm the grant of summary judgment.

A de novo standard of review applies to an appeal from a grant of summary judgment and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. If no issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is proper.

(Citation omitted.) *Richards v. Wells Fargo Bank, N.A.*, 325 Ga. App. 722, 724 (1) (754 SE2d 770) (2014).

So viewed, the record shows that on June 16, 2006, Maja Sly executed a multipurpose note and security agreement ("the note") in favor of First Georgia Community Bank ("FGCB") to fund the purchase of 4.93 acres of property on Flat Shoals Road, Riverdale, Georgia ("the property"). The note matured on June 10, 2007. On June 16, 2006, Sly executed a deed to secure debt ("the security deed") in favor of FGCB that encumbered the property. The security deed was recorded in the Fulton County real estate records and matured on June 16, 2007.

On June 19, 2007, Sly executed another multipurpose note and security agreement ("the first extension") for the property in favor of FGCB to renew the note and to extend the financing. The first extension matured on June 6, 2008. Finally, on June 6, 2008, Sly executed another extension and note renewal in favor of FGCB

2

("the second extension") which matured on December 6, 2008. The first extension and the second extension were not recorded.

Despite the extensions, Sly failed to make payments on the note, and FGCB's successor-in-interest, RES-GA Fourteen, LLC ("RES-GA"), executed a nonjudicial foreclosure on July 7, 2015. Matawin Ventures Trust Series 2015-1 ("Matawin Ventures") purchased the property at the foreclosure sale and, on April 14, 2017, it executed a quitclaim deed for the property to Kondaur Capital Corporation as trustee of Matawin ("Kondaur Capital"). Kondaur Capital then executed a special warranty deed on the property to the appellants on May 12, 2017. More than a year later, however, on May 25, 2018, Sly executed a quitclaim deed on the property to Freeport Title.

Freeport Title filed the instant action to quiet title, asserting that it had fee simple title in the property. Freeport Title subsequently filed a motion for summary judgment, claiming that RES-GA could not have foreclosed on the property because the property reverted to Sly on June 10, 2014 under OCGA § 44-14-80 — more than a year before RES-GA's purported foreclosure. The trial court denied Freeport Title's motion, determining that Freeport Title had "put forth no evidence to establish its title in the [p]roperty." Freeport Title later renewed its motion for summary judgment

supporting it with an affidavit from Allie Jett, who averred that the extensions "are not recorded in the Fulton County real estate records." The trial court granted Freeport Title's renewed motion for summary judgment and this appeal followed.

1. First, the appellants argue that the trial court erred by granting Freeport Title's renewed motion for summary judgment because, although Freeport Title had failed to disclose Jett as a witness, the trial court did not afford the appellants time to conduct additional discovery. We disagree.

The grant or denial of a motion for continuance to allow a non-moving party to conduct additional discovery to respond to a motion for summary judgment "lies within the sound discretion of the trial judge, and will not be reversed absent a showing of clear abuse of discretion." (Citation omitted.) *JarAllah v. Schoen*, 243 Ga. App. 402, 405 (4) (531 SE2d 778) (2000).

Georgia's summary judgment statute allows a party opposing summary judgment to request "a continuance to permit affidavits to be obtained or depositions to be taken" or perform additional discovery as the court may permit. OCGA § 9-11-56 (f). Therefore,

> [i]f a respondent requires further discovery to properly respond to a motion, [a] possible response[] may include filing a motion to extend

4

time to respond to the motion, . . . or an affidavit pursuant to OCGA § 9-11-56 (f) setting forth why the respondent is unable to proceed without further discovery.

(Citation omitted.) *Govindasamy v. Wells Fargo Bank, N.A.*, 311 Ga. App. 452, 454 (2) (715 SE2d 737) (2011). "It [is] not, however, the trial court's obligation to sua sponte determine," whether discovery is complete. *Herrman v. Cohen*, 252 Ga. App. 84 (1) (555 SE2d 17) (2001).

Here, while the parties filed a joint stipulation extending the time for the appellants to respond to Freeport Title's *initial* motion for summary judgment, the record is devoid of any requests to conduct additional discovery to respond to the *renewed* summary judgment motion. Additionally, after Freeport Title submitted its renewed motion and Jett's affidavit, the appellants had nearly two months to invoke OCGA § 9-11-56 (f) before the trial court ruled on the renewed motion, but failed to do so. Accordingly, the appellants have not shown that the trial court erred by proceeding to rule on the renewed motion for summary judgment and their claim therefore fails. See *Fortson v. Brown*, 302 Ga. App. 89, 90-91 (2) (690 SE2d 239) (2010) (holding that the trial court did not err by preventing the appellant from conducting additional discovery prior to ruling on the summary judgment motion,

5

where the appellant made no attempts to alert the trial court that additional discovery was needed to respond to the motion); *Carr v. Kindred Healthcare Operation, Inc.*, 293 Ga. App. 80, 82 (1) (666 SE2d 401) (2008) (holding that "[t]he trial court was not required to allow the completion of discovery before ruling on the motion for summary judgment" and that "if [the] [nonmovants] needed additional discovery for their response to [the] motion, they should have invoked OCGA § 9-11-56 (f).").

We also reject the appellants' argument that the trial court could not consider Jett's affidavit and should have refrained from ruling on Freeport Title's renewed motion for summary judgment in light of Freeport Title's failure to disclose Jett.[1] A similar issue was raised in *Hart v. Northside Hosp. Inc.*, 291 Ga. App. 208 (661 SE2d 576) (2008). There, the Harts appealed from the trial court's order granting Northside

---

[1] To the extent that the appellants argue that the trial court failed to address the issue of Freeport Title's failure to disclose Jett, this claim is meritless. The appellants filed a motion to strike Jett's affidavit below, arguing that the affidavit should be stricken because it contained expert testimony that was not previously disclosed as required by OCGA § 9-11-23 (b) (4) (A) (i). See OCGA § 9-11-26 (b) (4) (A) (i) ("A party may, through interrogatories, require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion."). In granting summary judgment, the trial court addressed the appellants' motion to strike and ruled that "Jett's statement that the [extensions] are not recorded in the Fulton County real estate records is not an expert opinion and is not beyond the understanding of the average lay person."

6

Hospital's motion for summary judgment and its motion in limine which barred the Harts from presenting testimony from an expert witness who was not disclosed during the discovery period. Id. at 208. In reversing the trial court's grant of the motion in limine, we held that "[t]he only appropriate remedy for the Harts' alleged failure to update their discovery responses was postponement of trial or a mistrial. The trial court simply did not have authority or latitude to grant the defendants' motion in limine." (Punctuation omitted.) Id. at 210 (1). We also reversed the trial court's order granting summary judgment because the excluded testimony created issues of fact that precluded the grant of summary judgment. Id. at 210 (2). See also *Thakkar v. St. Ives Country Club*, 250 Ga. App. 893 (1) (a) (553 SE2d 181) (2001) ("[The] exclusion of probative trial evidence is not an appropriate remedy for curing an alleged discovery omission.") (citation omitted). Thus, the appropriate remedy was for the appellants to request a continuance under OCGA § 9-11-56 (f),[2] and, in the

---

[2] For the same reason, the appellants' reliance on our decisions in *Elliot v. Resurgens, P. C.*, 336 Ga. App. 217 (782 SE2d 867) (2016), rev'd by 301 Ga. 589 (800 SE2d 580) (2017), *City of Atlanta v. Bennett*, 322 Ga. App. 726 (746 SE2d 198) (2013), and *Infinite Energy, Inc. v. Cottrell*, 295 Ga. App. 306 (671 SE2d 294) (2008) is greatly misplaced and none of these decisions compel a different result in this case.

7

absence of that request, the trial court did not err by considering Jett's affidavit in its grant of Freeport Title's renewed motion for summary judgment.[3]

2. Next, the appellants argue that the grant of summary judgment was improper because genuine issues of material fact still remain regarding the underlying loan agreement. We conclude that no genuine issues of material fact remain.

(a) As an initial matter, the appellants argue that there is a genuine factual issue as to whether the extensions prevented the property from reverting to Sly in 2014, such that RES-GA could foreclose on the property. This argument, however, lacks merit.

"Deeds are contracts, the interpretation of which is a matter of law for the court unless an ambiguity remains after the court applies the rules of construction." *United Bank v. West Central Ga. Bank*, 275 Ga. App. 418, 420 (620 SE2d 654) (2005). Georgia's reversion statute provides that title to property used to secure a debt reverts to the grantor

---

[3] We note that the appellants did not argue below, nor do they argue on appeal, that Freeport Title provided intentionally misleading answers to their written interrogatories or that Freeport Title deliberately suppressed Jett's identity. Thus, the Supreme Court of Georgia's decision in *Resurgens* does not compel a different result in this case. See *Resurgens, P. C. v. Elliot*, 301 Ga. 589, 594-599 (800 SE2d 580) (2017) (holding that the exclusion of an undisclosed material witness' testimony was a proper sanction where the identity of the witness was deliberately suppressed).

at the expiration of seven years from the maturity of the debt . . . provided, however, that where the parties by affirmative statement contained in the record of conveyance intend to establish a perpetual or indefinite security interest in the real property conveyed to secure a debt or debts, the title shall revert at the expiration of the later of (A) seven years from the maturity of the debt . . . or (B) 20 years from the date of the conveyance as stated in the record[.]

OCGA § 44-14-80 (a) (1). Therefore, "[i]f title has reverted to the grantor under this statute, all actions to foreclose upon and to recover the property are barred." (Citations omitted.) *Mike's Furniture Barn*, *Inc. v. Smith*, 342 Ga. App. 558, 560 (2) (803 SE2d 800) (2017). However, where the initial security deed was recorded and the debt's maturity date has been extended and recorded in the public record before the title reverts, the reversion date is extended "for an additional period of seven years or 20 years according to the appropriate reversion period stated in [OCGA § 44-14-80 (a)] from the date of the renewal[.]" OCGA § 44-14-80 (b).

Here, Sly's original note had a maturity date of June 10, 2007 and was extended twice with a final maturity date of December 6, 2008. Notably, although FGCB recorded the security deed in the Fulton County real estate records, the

9

extensions, however, were not recorded.[4] Consequently, RES-GA's nonjudicial foreclosure on July 7, 2015 occurred more than seven years after the note's 2007 maturity date. Therefore, the automatic 20-year extension provided for in OCGA § 44-14-80 (b) was not triggered, and the trial court properly granted summary judgment. See *Minor v. Neely*, 247 Ga. 147 (273 SE2d 853) (1981) (extension of a previously-executed security deed was required to be entered of record to prevent title from reverting to the grantor by operation of law at the expiration of the statutory period from maturity of the original debt). Compare *Matson v. Bayview Loan Servicing, LLC*, 339 Ga. App. 890, 893 (2) (795 SE2d 195) (2016) ("In the absence of evidence that these renewals were *not* placed in the public record in the manner required by OCGA § 44-14-80 (b), [plaintiff] has not yet made a prima facie showing of reversion of title and an issue of fact therefore remains with regard to [defendant's] alleged wrongful foreclosure.") (emphasis in original).

(b) The appellants further contend that the extensions raise a genuine factual issue as to whether Sly and FGCB intended to create a perpetual or indefinite security interest in the property such that the 20-year reversion period under OCGA § 44-14-

---

[4] "It is . . . the plain duty of a grantee to record his deed[.]" (Citation omitted.) *Reidling v. Holcomb*, 225 Ga. App. 229, 230-231 (1) (483 SE2d 624) (1997).

10

80 (a) (1) may apply. We disagree and determine that no factual issues exist as to whether Sly and FGCB intended to create a perpetual security interest in the property and therefore the 20-year reversion period under OCGA § 44-14-80 (a) (1) did not apply.

As previously stated, Georgia's default reversion period for real property conveyed to secure a debt is seven years from the debt's maturity date unless "the parties by affirmative statement contained in the record of conveyance intend to establish a perpetual or indefinite security interest in the real property conveyed to secure a debt or debts. . . ." OCGA § 44-14-80 (a) (1). Therefore, "[u]nder the plain language of this statute, any intent to create a perpetual and indefinite security interest must appear by an '*affirmative statement*' in the deed." (Citations omitted; emphasis in original). *Mike's Furniture Barn*, *Inc.*, supra, 342 Ga. App. at 560 (2).

Here, the security deed contains a fixed maturity date for a loan of a specific sum. Additionally, both of Sly's extensions also contain fixed maturity dates. Accordingly, we conclude that there is no genuine factual issue as to whether Sly and FGCB intended to create a perpetual or indefinite security interest in the Property. See *Mike's Furniture Barn, Inc.*, supra, 342 Ga. App. at 563 (2) ("Given the fixed maturity date in the Deed, with a loan for a sum certain rather than a revolving line

11

of credit, we conclude that the Deed lacks an affirmative statement of intent to create a perpetual and indefinite security interest in the property."); *Matson*, supra, 339 Ga. App. at 892-893 (1) (no intent to establish a perpetual or indefinite security interest in the real property where "the security deed stated it secured 'all renewals, extensions and modifications of the Note,' it also referenced a date certain for the maturity of the Note"). Although the appellants further argue that the existence of an "open-end" or "dragnet" clause[5] in the security deed creates a factual issue as to the parties' intent to create a perpetual or indefinite security interest, this Court has been clear that the existence of an open-end clause in conjunction with a fixed maturity date, by itself, does not constitute an affirmative statement of a perpetual or indefinite security interest that would dictate the Code's 20-year reversion period. *Mike's Furniture Barn*, supra, 342 Ga. App. at 563 (2).

Our decision in *Stearns Bank, N.A. v. Mullins*, 333 Ga. App. 369 (776 SE2d 485) (2015), does not compel a different result. There, the security deed showed, on its face, the parties' intent to create a revolving line of credit which would remain in effect until released. Id. at 371. Specifically, the deed in that case contained the

---

[5] An "open end" or "dragnet" clause is a clause in a security deed that provides that the deed "shall also secure any other debt or obligation that may be or become owning by the mortgagor or grantor[.]" OCGA § 44-14-1 (b).

12

following clause: "The Secured Debt includes a *revolving line of credit* provision. Although the Secured Debt may be reduced to a zero balance, the Security Instrument *will remain in effect until released*." (Emphasis supplied.) Id. at 371.[6] Because the parties affirmatively expressed their intent in the deed, we found that the 20-year reversion period applied. Id. at 373 (1). Therefore, *Stearns Bank* is distinguishable from the instant case and does not provide a basis for reversal of the trial court's grant of Freeport Title's renewed motion for summary judgment.

In sum, we conclude that the trial court did not err by ruling on the renewed motion for summary judgment without affording the appellants time to conduct additional discovery. We also conclude that no genuine issues of material fact remain regarding the underlying loan agreement, and we therefore affirm the trial court's order granting Freeport Title's renewed motion for summary judgment.

*Judgment affirmed. Mercier and Coomer, JJ., concur.*

---

[6] Though the security deed here includes an identical provision, the provision was left unchecked. See OCGA § 44-14-3 (a) (6) (defining a "revolving loan account").

13