**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS*
*COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN*
*THE TIMES SET BY OUR COURT RULES.*

**May 26, 2021**

# In the Court of Appeals of Georgia

A21A0232.  FREEPORT  TITLE  &  GUARANTY  INC.,  AS
TRUSTEE OF THE 4977 MEMORIAL TRUST v. TEGEUE
et al.

MERCIER, Judge.

In this action to quiet title to certain real property, Freeport Title & Guaranty

Inc. ("Freeport") seeks review of a trial court order adopting a special master's report

and entering a judgment against Freeport on its claim of title made pursuant to

Georgia's reversion statute. We affirm.

The underlying facts here are not in dispute. On September 1, 1999, GASR,

Inc. executed a promissory note ("the note") and deed to secure debt in favor of

Goleta National Bank, now known as Community West Bank ("Community West").

The security deed granted Community West interest in certain real property in

DeKalb County, Georgia ("the property"), and was recorded on October 29, 1999.

The note was not recorded, but provided that all "principal and accrued interest is due and payable 20 year(s) from date of initial disbursement," which was September 1, 1999. The security deed made reference to the note and included a space to insert the date of the final payment, but the line was left blank:

> (a) The debt evidenced by that certain promissory note (hereinafter referred to as the "Note") dated of even date herein, made by GASR . . . to the order of Lender in the principal face amount of ONE HUNDRED TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($125,000.00), with the final payment being due on or before _____; together with any and all renewals, modifications, consolidations and extensions of the indebtedness evidenced by the Note[.]

In May 2012, GASR filed a petition for Chapter 11 bankruptcy protection. In its statement of financial affairs, GASR identified Community West as the holder of a secured interest in the property. However, GASR later moved to dismiss its bankruptcy case, and in February 2013, the bankruptcy court granted dismissal.

In May 2013, Community West exercised the power of sale contained in the security deed, foreclosed on the property, and purchased the property at the sale. It then sold the property to Flying Cousins, LLC, and conveyed title pursuant to a limited warranty deed recorded on August 2, 2013. Five years later, in 2018, Flying

Cousins sold the property to Amsalu Tegeue and Sefrash Minyahel, conveying title by a limited warranty deed that was recorded on May 11, 2018.

In July 2018, even though Community West had foreclosed on GASR's interest in the property five years earlier, GASR executed a quitclaim deed in consideration of $10.00 conveying to Freeport its interest in the property. The following month, Freeport filed a petition to quiet title naming Tegeue and Minyahel as respondents and claiming that it was the fee simple owner of the property pursuant to the GASR quitclaim deed. Freeport argued that because the maturity date or the last installment of the debt was not stated in the security deed as required by OCGA § 44-14-80 (a) (2), title to the property had reverted to GASR in 2006; the 2013 foreclosure and all subsequent conveyances of the property were null and void; and Freeport was fee simple owner of the property pursuant to the GASR quitclaim deed.

Tegeue and Minyahel answered the petition and asserted a counterclaim to quiet title. They also sought a declaratory judgment that they owned the property free and clear of any interest of Freeport or GASR, and asserted a third-party complaint against GASR, Community West,[1] Flying Cousins, and the administrator of the Small

---

[1] Community West filed a cross-claim against GASR to recover on the note in the event it was determined that title reverted to GASR.

3

Business Administration, seeking, among other things, to reform the security deed to correct the mutual mistake/scrivener's error by inserting the final payment date of the note. Tegeue and Minyahel also asserted that Freeport, as successor in interest to GASR, was estopped from asserting a position inconsistent with GASR's position in its bankruptcy filing.

Community West, Flying Cousins, and Tegeue and Minyahel subsequently moved for summary judgment on Freeport's petition to quiet title, and Freeport filed a cross-motion for summary judgment. Tegeue and Minyahel also moved to dismiss Freeport's petition. The trial court appointed a special master to hear the dispute.

Following a hearing, the special master found it unnecessary to reach the parties' arguments with regard to the reversion statute and reformation of the security deed. Instead, it concluded that because GASR admitted in its bankruptcy filings that the security title to the property was held by Community West, and "sat silently by" as Community West foreclosed on and sold the property, Freeport, as GASR's privy, was bound GASR's admission and conduct, and was estopped from claiming title by reversion. The special master found further that when Freeport accepted the GASR quitclaim deed in 2018, it was on notice to inquire into the status of the security deed "given the obvious mistake of the scrivener in failing to fill in the maturity date, and

4

given its specific reference to the Promissory Note," and that it was undisputed that GASR was not in possession of the property and had not been in possession for at least five years. The special master recommended that the trial court deny Freeport's motion for summary judgment; grant the summary judgment motion filed by Community West, Flying Cousins, and Tegeue and Minyahel; dismiss Freeport's petition to quiet title; issue a declaration that Tegeue and Minyahel are vested with free simple title to the property; cancel the GASR quitclaim deed; and dismiss the third-party complaints as moot. The trial court adopted the findings of the special master and entered judgment in accordance with the recommendations.

Freeport now appeals, arguing that the trial court erred in finding that the security deed did not revert seven years from its execution, erred in "creating an estoppel exception to the reversion doctrine," and erred in holding that it was not a bona fide purchaser. "Once the trial court adopts the special master's findings and enters judgment, the court's decision is upheld by the appellate court unless clearly erroneous but conclusions of law are reviewed de novo." *Republic Title Co., LLC v. Freeport Title and Guar.*, 351 Ga. App. 408, 409 (829 SE2d 172) (2019) (citation and punctuation omitted).

1. Freeport first argues that the trial court erred in finding that the security deed did not revert back to GASR on September 1, 2006, seven years from its execution, pursuant to OCGA § 44-14-80 (a) (2). Freeport asserts that pursuant to this Code section, title to the property reverted to GASR in 2006 because the maturity date or the maturity of the last installment of the debt was not stated in the security deed, and, therefore, the 2013 foreclosure and all subsequent conveyances were void. It claims title to the property pursuant to the 2018 quitclaim deed from its purchase of GASR's interest.

"The construction of a deed, like any other contract, is a question of law that we review de novo." *Mike's Furniture Barn v. Smith*, 342 Ga. App. 558, 560 (2) (803 SE2d 800) (2017). "In construing a deed, the court's overriding goal is to ascertain and give effect to the intent of the parties." *Stearns Bank, N.A. v. Mullins*, 333 Ga. App. 369, 372 (1) (776 SE2d 485) (2015) (citation and punctuation omitted). OCGA § 44-14-80 (a) (1) sets forth the general rule establishing when title to property reverts to the grantor. That provision states in relevant part that

> [t]itle to real property conveyed to secure a debt or debts *shall revert* to the grantor or his or her heirs, personal representatives, successors, and assigns at the expiration of *seven years from the maturity of the debt or*

6

*debts or the maturity of the last installment* thereof *as stated or fixed in the record of the conveyance* or, if not recorded, in the conveyance[.][2]

(Emphasis supplied.) Freeport relies upon OCGA § 44-14-80 (a) (2), which provides that "[i]f the maturity of the debt or debts or the maturity of the last installment thereof *is not stated or fixed*, title to real property conveyed to secure a debt or debts *shall revert* at the expiration of *seven years from the date of the conveyance* as stated in the record or, if not recorded, in the conveyance[.]" (Emphasis supplied.) Subsections (a) (1) and (a) (2), construed together, require that the maturity date or the maturity of the last installment of the debt be stated or fixed in the conveyance to avoid reversion occurring seven years from the date of the conveyance. See, e.g., *Alltel Ga. Communications v. Ga. PSC*, 270 Ga. 105, 107 (505 SE2d 218) (1998) (appellate courts view a statute as a whole and construe all parts of a statute together to make them harmonize).

While it is clear that the date of maturity of the debt was not *stated* in the security deed, we consider whether it was *fixed*. "[I]t is an elementary rule of statutory construction that, absent clear evidence to the contrary, words should be assigned

---

[2] See, e.g., OCGA § 44-14-601 (4) ("'Conveyance' means a sale, lease, or other transfer of commercial real estate.").

7

their ordinary, logical, and common meaning." *Fulton County v. Berry*, 354 Ga. App. 841, 845 (841 SE2d 744) (2020) (citation and punctuation omitted). And we look to dictionary definitions for the common meaning of a particular word. Id. "Fixed" is defined as "not subject to change or fluctuation." See Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/fixed (website last accessed February 13, 2021). Here, although the security deed did not incorporate the note by reference,[3] it provided that the note was executed on the same date, stated the amount of the note, and made reference to a final payment date, even though that date was not written on the line provided. The language following the blank line referred to "renewals . . . and extension of the indebtedness evidenced by the [n]ote." The security deed is therefore sufficient to establish that the "maturity of the last installment" of the debt was fixed or "not subject to change," and that the parties to the deed intended that a date be provided. Compare *Vineville Capital Group, LLC v. McCook*, 329 Ga. App. 790, 791 (766 SE2d 156) (2014) (the face of the deed showed that the maturity date or last installment of the debt was not stated *or* fixed; deed provided only that the debt

---

[3] See *United Bank v. West Central Ga. Bank*, 275 Ga. App. 418, 419-420 (620 SE2d 654) (2005) (although date listed in deed did not refer to the maturity date or last installment of the debt, OCGA § 44-14-80 (a) (1) was satisfied because deed incorporated note by reference and date was the same as the maturity date of the note).

secured was payable on demand according to the terms of a promissory note). Therefore, reversion did not occur under OCGA § 44-14-80 (a) (2).

Moreover, even if we concluded that the date of the maturity the debt was not sufficiently "fixed" because it does not appear in the security deed, the date could be supplied by the contemporaneously executed note.[4] Former OCGA § 24-6-3(a), in effect at the time Freeport asserts reversion occurred, "authorize[d] the use of contemporaneously executed writings to provide necessary terms not contained in the document at issue, or to correct obvious errors in the document at issue."[5] *White House Inn & Suites v. City of Warm Springs*, 285 Ga. 322, 323 (1) (676 SE2d 178) (2009). And we have held that "contemporaneous writings should be considered even if one of the writings purports to contain the entire understanding of the parties hereto with respect to the transactions contemplated hereby and even if the writings are not

---

[4] We have held that "[o]ne thing is contemporaneous with a given transaction when it is so related in point of time as reasonably to be said to be a part of such transaction." See *Dabbs v. Key Equip. Finance*, 303 Ga. App. 570, 574 (694 SE2d 161) (2010) (citation and punctuation omitted) ("under Georgia rules of contract construction, where multiple documents are executed at the same time in the course of a single transaction, they should be construed together" (citations and punctuation omitted)). The evidence here showed that the note and security deed were contemporaneously executed documents.

[5] OCGA § 24-3-3 replaced former OCGA § 24-6-3 in 2013 and is identical to the former statute.

9

cross-referenced." *Duke v. KHD Deutz of America Corp.*, 221 Ga. App. 452, 452 (471 SE2d 537) (1996) (citation and punctuation omitted). Therefore, the contemporaneously executed note can be used to provide the exact date of the last installment of the debt - September 1, 2019. This gives effect to the intent of the parties to the security deed and note. See id. at 452-453.

Freeport asserts that the note cannot be used to change a term in the security deed because, under *Vineville*, supra, the note is inadmissible parol evidence. But as explained above, the security deed is sufficient on its face to establish that the maturity date of the debt was fixed. Even considering the contemporaneous writing rule, *Vineville* is distinguishable. There, this Court considered whether a security deed contained an affirmative statement showing that the parties intended to establish a perpetual or indefinite security interest as required under OCGA § 44-14-80 (a) (2). Id. at 794 (1) (a). We ruled that parol evidence was not admissible to make that determination because the language of (a) (2) was more specific than the general language of OCGA § 44-6-21 (court can "hear parol evidence to prove maker's intention"). Id. However, this is not a case involving whether a statement in a deed

established a perpetual security interest. Here, we only determine whether the maturity date of the debt was stated or fixed in the deed.[6]

We hold that under these unique circumstances, the maturity date of the last installment was fixed in the security deed, and the reversion provision of OCGA § 44-14-80 (a) (2) does not apply. As no reversion occurred, GASR had no interest in the property to convey to Freeport by quitclaim deed in 2018 following Community West's foreclosure and sale of the property in 2013. The trial court therefore did not err in entering a judgment in accordance with the special master's report that, among other things, included dismissal of Freeport's petition to quiet title.

2. Given our holding in Division 1 that reversion of title to the property did not occur under OCGA § 44-14-80 (a) (2), we need not address Freeport's remaining arguments.

*Judgment affirmed. McFadden, C. J., and Rickman, P. J., concur.*

---

[6] Freeport also relies on this Court's opinion in *Bell v. Freeport Title & Guar.*, 355 Ga. App. 94 (842 SE2d 565) (2020), but that case involved OCGA § 44-14-80 (b), which requires that *extensions* of a note be recorded. Id. at 98-99 (2) (a). There is no such requirement in the statute for the original note. Indeed, OCGA § 44-14-80 (a) anticipates that a conveyance (in which the maturity date of the debt should be stated or fixed) might not be recorded.